## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VINCENT FELICIANO, DIANA LONGA, GREG DEVANEY, PETER RONESS and CARLO TAGLIAVIA, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>METROPOLITAN TRANSPORTATION AGENCY and TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY,<br><br>Defendants. | Civil Case No.: 1:18-cv-00026<br><br>**COLLECTIVE ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Vincent Feliciano, Diana Longa, Greg Devaney, Peter Roness, and Carlo Tagliavia (collectively, "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their attorneys, hereby allege the following against Defendants Metropolitan Transportation Authority ("MTA") and Triborough Bridge and Tunnel Authority ("TBTA") (collectively, "Defendants"):

### <u>NATURE OF THE CLAIMS</u>

1.      Plaintiffs, on behalf of themselves and all current and former similarly situated bridge and tunnel Sergeants and Lieutenants ("Officers") employed by Defendants, bring this action against Defendants pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") to recover unpaid overtime compensation and liquidated damages for delayed payments of overtime and other wages.

2.      Defendants engage in a willful policy and practice of requiring Officers to regularly perform pre- and post-shift work without compensation, thereby intentionally depriving Officers of overtime compensation for hours worked in excess of 86 hours per 14-day work period.

3.      Moreover, Defendants employ a systemic time-shaving policy that automatically rounds Officers' clock-in times up to their scheduled tour start-times, and automatically rounds clock-out times down to their scheduled tour end-times, even though Officers are required to perform work before and after their scheduled tours.

4.      Defendants also engage in a payroll practice of intentionally miscalculating the Officers' overtime rates by refusing to include certain compensation, differentials, and bonuses in the regular rate of pay when calculating overtime, in violation of the FLSA and supporting regulations.

5.      Finally, Defendants engage in an unlawful policy and practice of delaying the payment of overtime compensation and other wages to the Officers beyond the regular payday.

6.      Defendants' organization-wide policies and practices affect all Officers and the resulting violations of the FLSA are continuous and ongoing.

7.      Plaintiffs' claims under the FLSA are brought as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and all other Officers who performed work for Defendants at any time during the full statute of limitations period.

**JURISDICTION AND VENUE**

8.      Pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, this Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiffs' rights under the FLSA.

9.      This Court also has subject matter jurisdiction over Plaintiffs' claims under the FLSA, pursuant to 29 U.S.C. § 216(b).

10.     Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this district because a substantial part of the events or omissions giving rise to this action occurred in this district.

11.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

**A.     Plaintiffs**

12.     Plaintiff Vincent Feliciano is a resident of the State of New York and has been employed by Defendants from November 2000 through the present.  In June 2002, Mr. Feliciano became a Sergeant and in October 2006 he was promoted to Lieutenant.  At all relevant times, Mr. Feliciano was an "employee" of Defendants within the meaning of the FLSA.

13.     Plaintiff Diana Longa is a resident of State of New York and has been employed by Defendants from November 2000 through the present.  Ms. Longa became a Sergeant in June 2002.  At all relevant times, Ms. Longa was an "employee" of Defendants within the meaning of the FLSA.

14.     Plaintiff Greg Devaney is a resident of State of New York and has been employed by Defendants from March 2002 through the present.  Mr. Devaney became a Sergeant in October 2006.  At all relevant times, Mr. Devaney was an "employee" of Defendants within the meaning of the FLSA.

15.     Plaintiff Peter Roness is a resident of State of New York and was employed by Defendants from March 2000 to his retirement on July 1, 2017.  In June 2002, Mr. Roness became a Sergeant and in October 2006 he was promoted to Lieutenant.  At all relevant times, Mr. Roness was an "employee" of Defendants within the meaning of the FLSA.

16.     Plaintiff Carlo Tagliavia is a resident of State of New York and was employed by Defendants from August 1992 to his retirement on April 20, 2017.  Mr. Tagliavia became a Sergeant in May 2003.  At all relevant times, Mr. Tagliavia was an "employee" of Defendants

within the meaning of the FLSA.

**B.     Defendant MTA**

17.     Defendant MTA is a public benefit corporation responsible for public transportation in New York and Connecticut, with its principal place of business located at 2 Broadway, New York, New York 10004.

18.     At all relevant times, Defendant MTA was an "employer" of Plaintiffs within the meaning of the FLSA.

19.     Upon information and belief, MTA negotiates the salaries of the Officers with the Superior Officers Benevolent Association ("SOBA") Union and controls the payroll, timekeeping, and compensation practices at issue in this case.

20.     MTA issues paychecks to all Officers.

21.     Upon information and belief, MTA exercises control over how the Officers' overtime rates are calculated and paid.

22.     Upon information and belief, MTA maintains the Officers' employment records and all other documents relating to Human Resources, benefits, and payroll in its Business Services Center.

**C.     Defendant TBTA**

23.     Defendant TBTA is a transportation and toll collection agency which operates seven intrastate toll bridges and two tunnels in New York City.  Defendant TBTA is an affiliate agency of MTA, with its principal place of business at 2 Broadway, New York, New York 10004.

24.     At all relevant times, Defendant TBTA was an "employer" of Plaintiffs within the meaning of the FLSA.

25.     Upon information and belief, TBTA handles Employee Relations issues of the Officers on behalf of the MTA.

26.     Upon information and belief, TBTA handles all Officer complaints relating to payroll, timekeeping, and compensation practices at issue in this case.

27.     Upon information and belief, TBTA exercises control over how the Officers' overtime rates are calculated and paid.

28.     At all relevant times, Defendants MTA and TBTA were, jointly and individually, "employers" of Plaintiffs, within the meaning of the FLSA.

29.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over employees.

## FACTS

**A.     Background**

30.     Plaintiffs all work for Defendants as Officers and, specifically, hold or have held the titles Sergeant and/or Lieutenant.

31.     The Officers' work week is defined as 14 consecutive days.

32.     Officers are typically scheduled to work seven 12-hour tours, for a total of 84 hours, per 14-day work period.

33.     Officers are typically scheduled to work the following tours: (i) 5:50 a.m. to 5:50 p.m. (12 hours); (ii) 5:50 p.m. to 5:50 a.m. (12 hours); (iii) 9:50 a.m. to 9:50 p.m. (12 hours); or (iv) 9:50 p.m. to 9:50 a.m. (12 hours).

34.     Officers may also be scheduled for "training sessions" for the following times: (i) 6:50 a.m. to 2:50 p.m. (eight hours) or (ii) 2:50 p.m. to 10:50 p.m. (eight hours).

35.     Defendants typically require "one-for-one relief" following the completion of a

tour, meaning that an outgoing Officer cannot leave until an incoming Officer arrives and the outgoing Officer briefs the incoming Officer.

**B.     Officers Perform Compensable Pre-Shift, Briefing, And Post-Shift Work Off-The-Clock**

36.     All Officers regularly perform "pre-shift" work before their scheduled tour starts, and before they even clock-in.

37.     Plaintiffs and other Officers routinely start working 20 to 50 minutes before their scheduled tour start-time in order to complete all of their pre-shift work.

38.     However, Defendants have a strict "20 minutes after the hour" clock-in policy which forbids Officers from clocking in earlier than 20 minutes after the hour in which their scheduled tour is to begin.

39.     The "20 minutes after the hour" clock-in policy requires Officers to wait until 21 minutes after the hour, in which their scheduled tour is to begin, before clocking in.

40.     For example, Officers may only clock-in at or after 5:21 a.m. for a tour that starts at 5:50 a.m.; they may only clock-in at or after 5:21 p.m. for a tour that starts at 5:50 p.m.; they may only clock-in at or after 9:21 p.m. for a tour that starts at 9:50 p.m.; and they may only clock-in at or after 9:21 a.m. for a tour that starts at 9:50 a.m.

41.     This "20 minutes after the hour" clock-in policy effectively means that Officers are not permitted to clock-in more than 29 minutes before their scheduled tour start-time.

42.     If Officers violate the "20 minutes after the hour" clock-in policy by clocking in too early, they are subject to potential discipline, including a formal write-up.

43.     This organization-wide policy results in Officers performing a significant amount of compensable, pre-shift work off-the-clock, and waiting until 21 minutes after the hour to finally clock-in.

44.     Officers' pre-shift work consists of, *inter alia*: (i) rebooting the computer and logging in; (ii) sorting through and responding to emails; (iii) relaying pertinent emails and information to other state agencies; (iv) listening to voice messages and returning phone calls; (v) reporting various directives and alerts to the command center; (vi) reviewing the Facility Log ("FLOG") system; (vii) signing out necessary equipment; (viii) testing the equipment to ensure functionality; and (ix) performing required vehicle checks in accordance with a 25-item checklist mandated by Defendants.

45.     This pre-shift work typically takes approximately 20 to 50 minutes.

46.     However, Officers are only permitted to clock-in 29 minutes before their scheduled tour start-time.

47.     Therefore, Officers typically perform a significant amount of compensable, pre-shift work before they are even permitted to clock-in.

48.     Aside from pre-shift work, which Officers perform before they are even permitted to clock-in, Defendants also have an organization-wide policy which requires Officers to be ready for "briefing" 15 minutes before their scheduled tour start-time.

49.     At this time, Officers must be in uniform, with their guns and all of their equipment, and must be completely ready to begin their scheduled tour.

50.     Briefing consists of an outgoing Officer updating an incoming Officer on all information relevant to his or her upcoming tour, including, *inter alia*: (i) current developments and operations; (ii) memoranda from other agencies; (iii) statuses of pending cases; (iv) statuses of assignments; (v) discussions related to ongoing incidents (i.e., car accidents); (vi) information on special projects and relevant activities that impact their work (i.e., scheduled events); (vii) road closures; (viii) bridge closures; (ix) outstanding arrests; (x) procedure updates and directives (i.e.,

awareness and response procedure updates); (xi) amber and silver alerts; and (xii) deployment and availability of certain Officers.

51.     Briefing typically takes approximately 15 minutes.

52.     While this working time is typically recorded, as further discussed below, Defendants have a systemic time-shaving policy that automatically cuts this working time, resulting in Officers performing this briefing work without compensation.

53.     All Officers also regularly perform "post-shift" work after their scheduled tour ends, and after they clock-out.

54.     Defendants also have a "20 minutes after the hour" clock-out policy, which requires Officers to clock-out earlier than 20 minutes after the hour following the end of their scheduled tour end-time.

55.     For example, Officers may only clock-out at or before 6:19 a.m. for a tour that ends at 5:50 a.m.; they may only clock-out at or before 6:19 p.m. for a tour that ends at 5:50 p.m.; they may only clock-out at or before 10:19 p.m. for a tour that ends at 9:50 p.m.; and they may only clock-out at or before 10:19 a.m. for a tour that ends at 9:50 a.m.

56.     If Officers violate this clock-out policy, they are subject to potential discipline, including a formal write-up.

57.     In order to make sure they avoid such discipline, Officers have a practice of clocking out within 29 minutes of the end of their tour (which is within 19 minutes of the hour after their tour ends), and then continue performing compensable, post-shift work off-the-clock.

58.     This post-shift work consists of, *inter alia*: (i) faxing documents (e.g., regarding collisions) to the legal department; (ii) processing arrests; (iii) sending emails to report on activities to the command center and other state agencies; (iv) scanning and logging paperwork (e.g.,

summonses, arrest reports, attendance logs, deployment reports) into the FLOG system; (v) filing hard copies of summonses and arrest reports in Defendants' internal system; (vi) preparing a Tour Report summarizing specific events that took place during the tour; (vii) returning equipment; (viii) signing off on required outgoing paperwork; and (ix) briefing the incoming Officer.

59.     This post-shift compensable work typically takes approximately 20 to 45 minutes and must be completed at the end of an Officer's tour.

60.     Officers typically perform this work off-the-clock with no compensation.

61.     Defendants require all Officers to perform pre-shift, briefing, and post-shift work without compensation; therefore, all Officers are subjected to Defendants' same unlawful off-the-clock work policies.

62.     Defendants have acted willfully and deliberately in maintaining an intentional practice of requiring Officers to perform compensable work off-the-clock.

63.     Due to Defendants' unlawful policy of requiring Officers to perform work before they were permitted to clock-in, and after they were forced to clock-out, the Officers' total hours worked are deflated by an average of 30 to 35 minutes every tour – or approximately three and one-half to four hours per 14-day work period – resulting in an unlawful failure to pay overtime wages.

64.     As discussed below, Defendants further deny the Officers overtime wages by using an unlawful timekeeping system that automatically shaves Officers' work time by approximately two to four hours every 14-day work period.

## C.     Unlawful Shaving of Recorded Work Time

65.     Defendants have an organization-wide timekeeping program called "Kronos."

66.     Kronos logs each Officer's acual clock-in and clock-out times.

67.     Kronos is also programmed with each Officers' scheduled tour times.

68.     When Kronos exports clock-in and clock-out times to Defendants' payroll system, it automatically rounds the Officers' clock-in times to their scheduled tour start-times and it automatically rounds the Officers' clock-out times to their scheduled tour end-times.

69.     Therefore, Defendants' organization-wide timekeeping and payroll policies and practices shave recorded work time and only give Officers credit for work time that is within their scheduled tour times, even though they routinely clock-in and perform work before their scheduled tour start-times and they routinely clock-out and perform work after their scheduled tour end-times.

70.     For example, if an Officer begins working and clocks in at 5:21 p.m. to comply with the "20 minutes after the hour" clock-in policy, Kronos will record the 5:21 p.m. clock-in time but will automatically round that clock-in time to 5:50 p.m. (the Officer's scheduled start-time), for payroll purposes.  Defendants' timekeeping and payroll system will automatically shave 29 minutes of work time for this Officer on the clock-in.

71.     Likewise, if an Officer continues working and clocks out at 6:19 a.m. to comply with the "20 minutes after the hour" clock-out policy, Kronos will record the 6:19 a.m. clock-out time but will automatically round that clock-out time to 5:50 a.m. (the Officer's scheduled end-time), for payroll purposes.  Defendants' timekeeping and payroll system will automatically shave 29 minutes of work time for this Officer on the clock-out.

72.     However, if an Officer arrives one minute late and clocks in at 5:51 p.m. for a 5:50 p.m. tour, the 5:51 p.m. late clock-in time will be recorded in Kronos but the clock-in time will be automatically rounded forward in 30-minute increments to 6:20 p.m. for payroll purposes.  The

10

Officer will continue working but Defendants' timekeeping and payroll system will automatically shave all time worked before 6:20 p.m. – which would be 29 minutes in this example.

73.     Also, the Officer is subject to potential discipline for arriving to work late, including a formal write-up.

74.     Indeed, Defendants timekeeping and payroll system never rounds time in favor of the Officers, but always rounds time in favor of the Defendants.

75.     Even though Officers must comply with "20 minutes after the hour" clock-in and clock-out policies, Defendants timekeeping and payroll system automatically cuts their recorded times for payroll purposes by rounding the Officers' work times to their scheduled tour times.

76.     Therefore, all work time that is performed before the scheduled tour start-time, including all pre-shift work and all briefing work, is always uncompensated, off-the-clock work.

77.     Likewise, all post-shift work that is performed after the scheduled tour end-time is always uncompensated, off-the-clock work.

78.     By way of example only, Mr. Feliciano's time records for the work period spanning from June 9, 2016 to June 22, 2016, illustrate Defendants' practice of shaving recorded work time. According to the time records, Mr. Feliciano worked 111 hours and 17 minutes but was only paid for 108 hours and 50 minutes during this work period.  Defendants' automatic time-rounding policy and practice resulted in his total time worked being reduced by 2 hours and 27 minutes.

79.     Similarly, but again by way of example only, Ms. Longa's time records for the work period spanning from July 9, 2016 to July 20, 2016, show that Ms. Longa worked 102 hours and 19 minutes but was only paid for 99 hours and 30 minutes during this time period.  Defendants' automatic time-rounding policy and practice resulted in her total time worked being reduced by 2 hours and 49 minutes.

80.     Defendants' shaving of Mr. Feliciano's and Ms. Longa's work hours is representative of Defendants' practices with respect to the remaining Plaintiffs and all other Officers.

81.     This shaved time is compensable working time as Defendants have a policy and practice of requiring Officers to perform pre-shift work, briefing work, and post-shift work, all outside the scheduled tour times.

82.     Furthermore, Defendants have acknowledged that this working time is compensable time by providing the Officers with a lump sum "check-in pay" payment to compensate the Officers for unpaid briefing time (discussed further below).

83.     However, this payment does not fully compensate Officers for their off-the-clock pre-shift, briefing, and post-shift work.

84.     Defendants engage in the same timekeeping and payroll practices with respect to all Officers and, thus, all Officers are subject to this unlawful time-shaving policy.

85.     Defendants have acted willfully and deliberately in maintaining intentional practices of improperly shaving the Officers' work time and forcing them to perform off-the-clock work.

86.     Due to Defendants' unlawful time-shaving policies and practices, the Officers' total hours are deflated by approximately two to four hours per 14-day work period, resulting in an unlawful failure to pay overtime wages.

**D.     Failure To Calculate Overtime Based On The Differential Rate Of Pay**

87.     Pursuant to a collective bargaining agreement among the parties, in addition to being paid at their respective regular hourly rates, Officers also receive other forms of compensation.

88.     First, Officers receive shift differentials for working a nighttime tour (the "Shift Differentials").

89.     Second, Officers receive annual "attendance bonuses" if they maintain a perfect attendance record for the year (the "Attendance Bonuses").

90.     Third, Officers receive the following lump sum payments at various times throughout the year, irrespective of their hours worked: (i) "longevity pay," which is based solely on the number of years for which a given Officer has been employed by Defendants; (ii) "check-in pay," which is a fixed amount of money intended to partially compensate Officers for briefing work; (iii) a bi-annual lump sum payment referred to as "SOBA special hours;" (iv) a lump sum "law enforcement differential" similarly awarded to Officers irrespective of their hours worked; and (v) an additional lump sum payment for four hours of "earned pay" to compensate the Officers for a previously agreed-upon reduction in their total hours (collectively, the "Lump Sum Payments").

91.     The Officers ***do not*** allege that they are not paid these Shift Differentials, Attendance Bonuses, and/or Lump Sum Payments; rather, Defendants fail to include this additional compensation in the Officers' regular rates of pay for purposes of calculating their overtime rates.

92.     This practice results in an unlawful reduction in the Officers' overtime pay.

93.     The Shift Differentials and Lump Sum Payments meet the requirements to be considered non-overtime premiums, which must be included in the regular rate of pay, upon which the overtime rate is computed, pursuant to 29 C.F.R. § 778.207.

94.     Indeed, 29 C.F.R. § 778.207(b) explicitly states that "nightshift differentials" and "lump sum premiums which are paid without regard to the number of hours worked" are to be

considered non-overtime premiums and must be included in the regular rate upon which the overtime rate is based.  *See also* 29 C.F.R. §§ 778.201(b)-(c) (stating that only the premiums delineated in FLSA §§ 207(e)(5)-(7) may be credited toward overtime compensation due, and that "[n]o other types of remuneration may be so credited"); 29 C.F.R. § 778.207(a) (same).

95.     The Lump Sum Payments are paid in fixed amounts irrespective of the number of hours the Officers work during a given work period.

96.     None of the Lump Sum Payments fall into the categories listed in FLSA §§ 207(e)(5)-(7).

97.     The Attendance Bonuses are properly considered "promised bonuses" which must be included in the regular rate of pay under 29 C.F.R. § 778.211(c).  *See also* 29 C.F.R. § 778.208 (stating that bonuses not specifically excluded by FLSA § 207(e) "must be totaled in with other earnings to determine the regular rate on which overtime must be based").

98.     The Attendance Bonuses are not excluded under FLSA § 207(e).

99.     In fact, 29 C.F.R. § 778.211(c) expressly states that "[a]ttendance bonuses" and bonuses promised to employees as "the result of collective bargaining" are not excluded under FLSA § 207(e) and must be included in the regular rate of pay for purposes of calculating the overtime rate.

100.    Pursuant to 29 U.S.C. § 207(k) and 29 C.F.R. § 553.230, employees engaged in law enforcement activities subject to a 14-day work period are entitled to overtime compensation if they work more than 86 hours during a work period.

101.    The Officers' work periods cover a 14-day timeframe spanning from Thursday to Wednesday.

102.    Officers are typically scheduled to work seven 12-hour tours per 14-day work

period.

103.    The Officers consistently work in excess of 86 hours during each 14-day work period, thus entitling them to overtime compensation under the FLSA.

104.    However, Defendants improperly exclude the Shift Differentials, Attendance Bonuses, and Lump Sum Payments from the Officers' regular rates of pay when computing their overtime rates.

105.    As a result, the Officers' overtime compensation is unlawfully reduced.

106.    Defendants have acted willfully and deliberately in maintaining this intentional practice of improperly excluding the Shift Differentials, Attendance Bonuses, and Lump Sum Payments from the Officers' regular rates of pay when computing their overtime rates.

**E.    Failure to Pay Wages on Time**

107.    In addition to the foregoing violations, throughout the relevant period, Defendants have engaged in a policy and practice of delaying payment of overtime and wages to the Officers beyond their regularly scheduled paydays.

108.    Indeed, instead of receiving all wages for work performed within a given pay period, Officers only receive compensation for their non-overtime wages on their regularly scheduled bi-weekly payday.

109.    All overtime wages are withheld and not paid until up to two pay periods – four to six weeks – after the work was performed.

110.    Under the FLSA, employers are required to pay employees on the next regularly scheduled payday following the work performed.

111.    By way of example only, attached hereto as Exhibit A are copies of two wage statements for Mr. Feliciano.  For the statement encompassing the work period from February 18,

2016 through March 2, 2016, a direct deposit was made into Mr. Feliciano's bank account on March 2, 2016. This deposit, issued in the gross amount of $3,581.91, includes payment both for his regular hours worked during the same work period, as well as for overtime earned – four to six weeks earlier – during the work period from January 21, 2016 through February 3, 2016 (illustrated on the statement under the heading "HOURS AND EARNINGS --- Prior Period ---").

112.    This practice is then showed repeated in the following wage statement, dated March 16, 2016. This statement, reflecting a direct deposit of $4,141.01 into Mr. Feliciano's bank account on March 16, 2016, should be for work performed only from March 3, 2016 through March 16, 2016. However, it also reflects overtime earned – four to six weeks earlier – during the work period from February 4, 2016 through February 17, 2016 (again illustrated on the statement under the heading "HOURS AND EARNINGS --- Prior Period ---").

113.    Similarly, but again by way of example only, attached hereto as Exhibit B are copies of two wage statements issued to Ms. Longa. For the statement encompassing the work period from February 4, 2016 through February 17, 2016, a direct deposit was made into Ms. Longa's bank account on February 17, 2016. This deposit, issued in the gross amount of $2,183.42, includes payment both for her regular hours worked during the same work period, as well as for overtime earned – four to six weeks earlier – during the work period from January 7, 2016 through January 20, 2016 (illustrated on the statement under the heading "HOURS AND EARNINGS --- Prior Period ---").

114.    This practice is then showed repeated in the following wage statement, dated March 2, 2016. This statement, reflecting a direct deposit of $2,307.79 into Ms. Longa's bank account on March 2, 2016, should be for work performed only from February 18, 2016 through March 2, 2016. However, it also reflects overtime earned – four to six weeks earlier – during the work

period from January 21, 2016 through February 3, 2016 (again illustrated on the statement under the heading "HOURS AND EARNINGS --- Prior Period ---").

115.    Defendants' failure to pay Mr. Feliciano's and Ms. Longa's overtime wages on time is representative of Defendants' practices with respect to the remaining Plaintiffs and all other Officers.

116.    Indeed, throughout the relevant period, Defendants have undertaken a willful and deliberate policy and practice of violating the FLSA by failing to timely pay the Officers for work performed on their next regularly scheduled payday.

## FLSA COLLECTIVE ACTION ALLEGATIONS

117.    Plaintiffs bring their FLSA claims as a collective action on behalf of themselves and all other similarly situated persons who have been employed by Defendants as Officers during the full statute of limitations period (the "FLSA Collective").

118.    At all relevant times, Plaintiffs and the FLSA Collective were similarly situated, had substantially similar job requirements, were paid in the same manner and under the same common policies, and were subject to Defendants' practices of: (i) unlawfully requiring them to perform off-the-clock work for which they received no compensation; (ii) shaving their work time and thereby reducing their recorded hours worked and thus their overtime compensation; (iii) failing and refusing to include Shift Differentials, Attendance Bonuses, and Lump Sum Payments in their regular rates of pay for purposes of calculating their overtime rates; and (iv) failing and refusing to pay their overtime wages on time.

119.    At all relevant times, Defendants have been fully aware of the duties performed by Plaintiffs and the FLSA Collective, and that those duties are not exempt from the overtime provisions of the FLSA.

120.    Defendants' violations of the FLSA have been willful, repeated, knowing, intentional, and without a good faith basis, and have significantly damaged Plaintiffs and the FLSA Collective.

121.    As a result of Defendants' conduct, Defendants are liable to Plaintiffs and the FLSA Collective for the full amount of their unpaid overtime wages, with interest, plus an additional equal amount as liquidated damages, plus the attorneys' fees and costs incurred by Plaintiffs and the FLSA Collective.

122.    While the exact number of the FLSA Collective is unknown to Plaintiffs at this time, upon information and belief, there are approximately 150 other similarly situated persons who were employed by Defendants as Officers during the full statute of limitations period.

123.    Plaintiffs are currently unaware of the identities of the members of the FLSA Collective.

124.    Accordingly, Defendants should be required to provide Plaintiffs with a list of all persons employed by Defendants as Officers during the full statute of limitations period, along with their last known addresses, telephone numbers, and e-mail addresses, so Plaintiffs can give the members of the FLSA Collective notice of this action and an opportunity to make an informed decision about whether to participate in it.

### FIRST CLAIM FOR RELIEF
### VIOLATIONS OF THE FLSA: OFF-THE-CLOCK WORK

125.    Plaintiffs, on behalf of themselves and the FLSA Collective, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

126.    Plaintiffs and the FLSA Collective are employees under FLSA § 203(e).

127.    Defendants are employers under FLSA § 203(d).

128.    Defendants were not exempt from the requirement to pay Plaintiffs and the FLSA

Collective one and one-half times their regular rate of pay for all hours worked in excess of 86 hours per 14-day work period.

129.    Defendants maintained a uniform policy and practice of requiring Plaintiffs and the Collective to perform compensable pre-shift, briefing, and post-shift work off-the-clock.

130.    This off-the-clock work resulted in Plaintiffs and the FLSA Collective working considerably longer than 86 hours per 14-day work period.

131.    However, Defendants did not compensate Plaintiffs and the FLSA Collective for this off-the-clock work.

132.    Accordingly, Defendants failed to pay Plaintiffs and the FLSA Collective at a rate of one-and-one-half times their regular rate of pay for time spent performing the off-the-clock work.

133.    Defendants knew or should have known of their obligation to pay Plaintiffs and the FLSA Collective overtime wages for all hours worked in excess of 86 hours per 14-day work period.

134.    Defendants have acted willfully and deliberately in maintaining an intentional policy and practice of failing to compensate Plaintiffs and the FLSA Collective in accordance with the FLSA.

135.    Defendants' violations of the FLSA have significantly damaged Plaintiffs and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, and attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
## VIOLATIONS OF THE FLSA: SHAVING WORK TIME

136.    Plaintiffs, on behalf of themselves and the FLSA Collective, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

137.    Plaintiffs and the FLSA Collective are employees under FLSA § 203(e).

138.    Defendants are employers under FLSA § 203(d).

139.    Defendants were not exempt from the requirement to pay Plaintiffs and the FLSA Collective one and one-half times their regular rate of pay for all hours worked in excess of 86 hours per 14-day work period.

140.    Defendants maintain an organization-wide timekeeping and payroll policy and practice of automatically rounding Plaintiffs' and the FLSA Collective's clock-in times to their scheduled tour start-times, even if they clocked in and began working before their scheduled tour start-times.

141.    Defendants also maintain an organization-wide timekeeping and payroll policy and practice of automatically rounding Plaintiffs' and the FLSA Collective's clock-out times to their scheduled tour end-times, even if they clocked out and continued working after their scheduled tour end-times.

142.    Additionally, if Plaintiffs or the FLSA Collective are even one minute late, Defendants timekeeping and payroll system will automatically round Officers' clock-in times, to reflect that they clocked in 30 minutes after their scheduled tour start-times.

143.    Defendants' time-shaving policy and practice applies to all Plaintiffs and the FLSA Collective.

144.    Defendants did not compensate Plaintiffs and the FLSA Collective for all work time cut as a result of Defendants' time-shaving policy and practice.

145.    Defendants' time-shaving policy and practice resulted in Plaintiffs and the FLSA Collective working considerably longer than 86 hours in a 14-day work period without compensation.

20

146.    Accordingly, Defendants failed to pay Plaintiffs and the FLSA Collective at a rate of one-and-one-half times their regular rate of pay for all hours worked in excess of 86 hours per 14-day work period.

147.    Defendants knew or should have known of their obligation to pay Plaintiffs and the FLSA Collective overtime wages for all hours worked in excess of 86 hours per 14-day work period.

148.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the FLSA Collective in accordance with the FLSA.

149.    Defendants' violations of the FLSA have significantly damaged Plaintiffs and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, and attorneys' fees and costs.

**THIRD CLAIM FOR RELIEF**
**VIOLATIONS OF THE FLSA: INCORRECT OVERTIME RATE**

150.    Plaintiffs, on behalf of themselves and the FLSA Collective, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

151.    Plaintiffs and the FLSA Collective are employees under FLSA § 203(e).

152.    Defendants are employers under FLSA § 203(d).

153.    Defendants were not exempt from the requirement to pay Plaintiffs and the FLSA Collective one and one-half times their regular rate of pay for all hours worked in excess of 86 hours per 14-day work period.

154.    The FLSA and its supporting regulations require that the Shift Differentials, Attendance Bonuses, and Lump Sum Payments be included in the regular rate of pay for purposes of calculating the overtime rate.

155.    Defendants maintained a uniform policy and practice of excluding Shift

Differentials, Attendance Bonuses, and Lump Sum Payments from Plaintiffs' and the FLSA Collective's regular rates of pay when calculating their overtime rates.

156.    As a result of Defendants' policy and practice, Plaintiffs' and the FLSA Collective's overtime rates were reduced, causing Plaintiffs and the FLSA Collective to be denied overtime compensation.

157.    Defendants knew or should have known of their obligation to include the Shift Differentials, Attendance Bonuses, and Lump Sum Payments paid to Plaintiffs and the FLSA Collective in their regular rates of pay when calculating their overtime rates, but nevertheless failed to do so.

158.    Defendants acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the FLSA Collective in accordance with the FLSA.

159.    Defendants' violations of the FLSA have significantly damaged Plaintiffs and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, and attorneys' fees and costs.

**FOURTH CLAIM FOR RELIEF**
**VIOLATIONS OF THE FLSA: FAILURE TO TIMELY PAY WAGES**

160.    Plaintiffs, on behalf of themselves and the FLSA Collective, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

161.    Plaintiffs and the FLSA Collective are employees under FLSA § 203(e).

162.    Defendants are employers under FLSA § 203(d).

163.    Pursuant to 29 C.F.R. § 778.106, "overtime compensation earned in a particular workweek must be paid on the regular payday for the period in which such workweek ends."

164.    Defendants engaged in a pattern and practice of failing to pay Plaintiffs and the FLSA collective all overtime wages owed on the regular payday for the period in which the work

was performed.

165.    Instead, Defendants had a uniform policy and practice of paying overtime wages two pay periods – four to six weeks – after the work was performed.

166.    Defendants knew or should have known of their obligation to pay Plaintiffs and the FLSA Collective on the regularly scheduled payday for the period in which the work was performed.

167.    Defendants acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs in accordance with the FLSA.

168.    Defendants' violations of the FLSA have significantly damaged Plaintiffs and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, with interest, an additional equal amount in liquidated damages, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the FLSA Collective, respectfully request that this Court:

A.    Declare that the practices complained of herein are unlawful under applicable federal law;

B.    Declare this action to be maintainable as a collective action pursuant to 29 U.S.C. § 216, and direct Defendants to provide Plaintiffs with a list of all members of the FLSA Collective, including all last known addresses, telephone numbers, and e-mail addresses of each such person, so Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

C.    Determine the damages sustained by Plaintiffs and the FLSA Collective as a result of Defendants' violations of the FLSA, and award those damages against Defendants and in favor

of Plaintiffs and the FLSA Collective, plus such pre-judgment and post-judgment interest as may be allowed by law;

  D.  Award Plaintiffs and the FLSA Collective an additional equal amount as liquidated damages because Defendants' violations were willful and/or without a good faith basis;

  E.  Award Plaintiffs and the FLSA Collective their reasonable attorneys' fees and costs and disbursements in this action including, but not limited to, any accountants' or experts' fees; and

  F.  Grant Plaintiffs and the FLSA Collective such other and further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

  Plaintiffs, on behalf of themselves and all other similarly situated Officers, hereby demand a trial by jury on all issues of fact and damages.

Dated: January 2, 2018

**FARUQI & FARUQI, LLP**

By:  */s/ Innessa M. Huot*
  Innessa Melamed Huot (IH-1916)
  Alex J. Hartzband (AH-0934)

685 Third Avenue, 26th Floor
New York, New York 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: ihuot@faruqilaw.com
   ahartzband@faruqilaw.com

**TILTON BELDNER, LLP**
Joshua Beldner
Eric S. Tilton
626 RXR Plaza
Uniondale, NY 11556
Telephone: (516) 262-3602
Facsimile: (516) 324-2170
Email: jbeldner@tiltonbeldner.com
   etilton@tiltonbeldner.com

*Attorneys for Plaintiffs and the Proposed FLSA Collective*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VINCENT FELICIANO, DIANA LONGA, GREG DEVANEY, PETER RONESS and CARLO TAGLIAVIA, on behalf of themselves and others similarly situated,<br><br>           Plaintiffs,<br><br>        v.<br><br>METROPOLITAN TRANSPORTATION AGENCY and TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY,<br><br>           Defendants. | Civil Case No.:<br><br>**CONSENT TO SUE** |

I was/am employed by Defendants and am a named Plaintiff in the above-entitled action, *Feliciano, et al. v. Metropolitan Transportation Agency and Triborough Bridge and Tunnel Authority*, pending in the United States District Court for the Southern District of New York. I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.


Name (Print): ___Vincent Feliciano___


Signature: ___Vincent Feliciano___        Date: ___12/18/17___


1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VINCENT FELICIANO, DIANA LONGA, GREG DEVANEY, PETER RONESS and CARLO TAGLIAVIA, on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> METROPOLITAN TRANSPORTATION AGENCY and TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY, <br><br> Defendants. | Civil Case No.: <br><br> **CONSENT TO SUE** |

I was/am employed by Defendants and am a named Plaintiff in the above-entitled action, *Feliciano, et al. v. Metropolitan Transportation Agency and Triborough Bridge and Tunnel Authority*, pending in the United States District Court for the Southern District of New York. I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

Name (Print): DIANA LONGA

Signature: _____

Date: 12/18/2017

I

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VINCENT FELICIANO, DIANA LONGA, GREG DEVANEY, PETER RONESS and CARLO TAGLIAVIA, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>METROPOLITAN TRANSPORTATION AGENCY and TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY,<br><br>Defendants. | Civil Case No.:<br><br>**CONSENT TO SUE** |

I was/am employed by Defendants and am a named Plaintiff in the above-entitled action, *Feliciano, et al. v. Metropolitan Transportation Agency and Triborough Bridge and Tunnel Authority*, pending in the United States District Court for the Southern District of New York. I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

Name (Print): GREGORY J. DEVANEY

Signature:

Date: 12/15/17

1

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VINCENT FELICIANO, DIANA LONGA, GREG DEVANEY, PETER RONESS and CARLO TAGLIAVIA, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>METROPOLITAN TRANSPORTATION AGENCY and TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY,<br><br>Defendants. | Civil Case No.:<br><br>**CONSENT TO SUE** |

I was/am employed by Defendants and am a named Plaintiff in the above-entitled action, *Feliciano, et al. v. Metropolitan Transportation Agency and Triborough Bridge and Tunnel Authority*, pending in the United States District Court for the Southern District of New York. I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

Name (Print): Peter Roness

Signature: _[signature]_          Date: 12/17/17

1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VINCENT FELICIANO, DIANA LONGA, GREG DEVANEY, PETER RONESS and CARLO TAGLIAVIA, on behalf of themselves and others similarly situated, | Civil Case No.: |
| | **CONSENT TO SUE** |
| Plaintiffs, | |
| v. | |
| METROPOLITAN TRANSPORTATION AGENCY and TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY, | |
| Defendants. | |

I was/am employed by Defendants and am a named Plaintiff in the above-entitled action, *Feliciano, et al. v. Metropolitan Transportation Agency and Triborough Bridge and Tunnel Authority*, pending in the United States District Court for the Southern District of New York. I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

Name (Print): _Carlo Tagliavia_

Signature: _Carlo Tagliavia_     Date: _12/18/2017_

1