# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

VINCENT FELICIANO, DIANA LONGA,                :
GREG DEVANEY, PETER RONESS and                 :        Case No.:  18-CV-0026 (VSB)
CARLO TAGLIAVIA, on behalf of themselves       :
and all others similarly situated,             :
                                               :        **ECF Case**
                        Plaintiffs,            :
                                               :
            v.                                 :
                                               :
METROPOLITAN TRANSPORTATION                    :
AUTHORITY and TRIBOROUGH BRIDGE                :
AND TUNNEL AUTHORITY,                          :

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## SETTLEMENT STIPULATION

This Settlement Stipulation is made by and between the Named Plaintiffs (as defined below) and the Opt-In Plaintiffs (as defined below), on the one hand, and Defendants Metropolitan Transportation Authority ("MTA") and Triborough Bridge and Tunnel Authority ("TBTA") (each a "Defendant" and collectively, "Defendants"), on the other hand, to fully and completely settle *Feliciano et al. v. MTA and TBTA*, (S.D.N.Y. Case No. 18 Civ. 0026) (the "Litigation");

WHEREAS, in the Litigation, the Named Plaintiffs and Opt-In Plaintiffs have asserted claims under the Fair Labor Standards Act ("FLSA") for allegedly unpaid wages, unpaid overtime wages, and other relief; and

WHEREAS, on August 17, 2018, the Court conditionally certified this action as a collective action under the FLSA, and permitted all current and former Sergeants and Lieutenants who work or have worked for the TBTA from August 2015 through August 2018 to opt-in and join the case as FLSA collective action members. *See* Dkt. No. 45. Together with the five (5) Named Plaintiffs, one-hundred and sixty-nine (169) Sergeants and Lieutenants (collectively, the "Plaintiffs") submitted to the Court Consent to Join forms and opted in to become plaintiffs in the Litigation pursuant to 29 U.S.C. § 216(b), including, *inter alia*, to be "bound by any judgment of the Court, or settlement reached by the Named Plaintiffs and Defendants concerning unpaid wages, overtime wages, liquidated damages, attorneys' fees, costs and other relief arising out of their employment with Defendants" (*see* Dkt. Nos. 52-60, 62-63); and

WHEREAS, Defendants expressly deny that they and their former and current owners, partners, employees, members, agents and/or related business entities have committed any wrongdoing or violated any laws, vigorously dispute the claims asserted in the Litigation and continue to assert that they have strong and meritorious defenses to any and all such claims; and

WHEREAS, to avoid uncertainty and the expense and burdens of further litigation and after substantial, arms-length settlement negotiations, including private mediation sessions held

before Martin F. Scheinman on November 15, 2019 and December 11, 2019, the Named Plaintiffs, Opt-In Plaintiffs and the Defendants (collectively, the "Parties") desire to resolve the Litigation.

NOW, THEREFORE, the Parties agree as follows:

1. **Definitions**. As used in this Settlement Stipulation, the following terms have the following meanings:

   a. **"Agreement"** means this Settlement Stipulation.

   b. **"Allocated Payments to Each Plaintiff"** means the individual payments from the Net Allocation Fund that each Plaintiff shall receive in Settlement Checks based on the Settlement Allocation Formula (as described below in Section 5 and as set forth on Exhibit B attached hereto).

   c. **"Approval Order"** means the Court's order approving the Settlement.

   d. **"Attorneys' Fees and Costs"** means the amount of attorneys' fees and costs to be paid to Plaintiffs' Counsel from the Gross Settlement Fund pursuant to Plaintiffs' Counsel's motion and subject to the Court's approval as set forth in Section 4(b), below.

   e. **"Claims Administrator"** means Arden Claims Service, which has been designated by mutual agreement between by Defendants' Counsel and Plaintiffs' Counsel to administer the Settlement.

   f. **"Claims Administrator Fees and Costs"** means the amount to be paid to the Claims Administrator for administering the Settlement, subject to the limitations described in Section 8(f), below.

   g. **"Court"** means the United States District Court for the Southern District of New York.

   h. **"Defendants' Counsel"** means Proskauer Rose LLP.

   i. **"Effective Date"** means: (i) if no appeal is taken from the Approval Order, thirty-five (35) calendar days after the Court's entry of the Approval Order; or (ii) if an appeal is taken from the Approval Order, the date on which all such appeals (including, *inter alia*, petitions for rehearing or reargument, petitions for rehearing *en banc*, and petitions for *certiorari* or any other form of review) have been finally disposed and can no longer be appealed or reviewed.

   j. **"FLSA"** means the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*

   k. **"FLSA Wage and Hour Claims"** means any suits, actions, causes of action, complaints, charges, grievances, claims, demands, debts, losses, obligations and/or liabilities based on an alleged violation of or related to the Fair Labor Standards Act ("FLSA"), including, but not limited to, for the failure to provide wages, overtime pay, failures in record keeping, off-the-clock claims, spread-of-hours pay, late

2

payment of wages, or any other claims that were asserted or could have been asserted under the FLSA in this Litigation, whether known or unknown, suspected and/or unsuspected, concerning, relating to and/or otherwise arising out of the time each Plaintiff was employed as a Sergeant and/or Lieutenant for the Triborough Bridge and Tunnel Authority during the Relevant Time Period.

l.   **"Gross Settlement Fund"** means $5,400,000.00, which is the amount Defendants agree to pay to fully resolve and settle Plaintiffs' claims in this Litigation, including the payment of all Settlement Checks, all claims for Attorneys' Fees and Costs (as defined below in Section 4(b), and all Service Payments to the Named Plaintiffs (as defined below in Section 4(c).

m.   **"Litigation"** means *Feliciano et al. v. MTA and TBTA*, (S.D.N.Y. Case No. 18 Civ. 0026).

n.   **"Named Plaintiffs"** means Vincent Feliciano, Diana Longa, Greg Devaney, Peter Roness, and Carlo Tagliavia, the five (5) Named Plaintiffs in the Litigation.

o.   **"Net Allocation Fund"** means the remainder of the Gross Settlement Fund after deductions are made for Court-approved Attorneys' Fees and Costs (as defined below in Section 4(b) and Service Payments to the Named Plaintiffs (as defined below in Section 4(c).

p.   **"Notice Forms"** means the notice form on Exhibit A attached hereto.

q.   **"Notice Package"** means the package compiled by the Claims Administrator, which shall include the applicable Notice Form and Settlement Checks which will be sent to the Plaintiffs.

r.   **"Opt-In Plaintiffs"** means the one-hundred sixty-four (164) individuals (which does not include the five (5) Named Plaintiffs) who have submitted to the Court Consent to Join forms and opted in to become plaintiffs in the Litigation pursuant to 29 U.S.C. § 216(b), including, *inter alia*, the agreement to be "bound by any judgment of the Court, or settlement reached by the Named Plaintiffs and Defendants concerning unpaid wages, overtime wages, liquidated damages, attorneys' fees, costs and other relief arising out of their employment with Defendants." *See* Dkt. Nos. 52-60, 62-63.

s.   **"Parties"** means the Named Plaintiffs, Opt-In Plaintiffs, and Defendants.

t.   **"Plaintiffs"** means the Named Plaintiffs and Opt-In Plaintiffs, collectively.

u.   **"Plaintiffs' Counsel"** means collectively Faruqi & Faruqi, LLP and Tilton Beldner, LLP.

v.   **"QSF"** means the Qualified Settlement Fund, as set forth in Section 7 below, to be established and administered by the Claims Administrator, which will be used to pay all Settlement Checks (as set forth below in Section 5), all of the Attorneys' Fees and Costs (as set forth below in Section 4(b)), Service Payments to the Named Plaintiffs

3

(as set forth below in Section 4(c)), the Claims Administrator Fees and Costs (as set forth below in Section 8(f)), and any other monetary obligations required pursuant to the terms of this Agreement and applicable law.

w.   **"Released Parties"** means MTA, TBTA, and any of their past or present affiliates or subsidiaries now or as they and/or their successors may be constituted in the future, including but not limited to, MTA New York City Transit, MTA Bus Company, the Manhattan and Bronx Surface Transit Operating Authority, Metro-North Commuter Railroad Company, Long Island Rail Road, Metropolitan Suburban Bus Authority (Long Island Bus), Staten Island Rapid Transit Operating Authority, and MTA Capital Construction Company, its or their past or present officers, officials, directors, employees, managers, supervisors, representatives, attorneys, and agents, its or their heirs, predecessors, successors and/or assigns.

x.   **"Relevant Time Period"** means for (i) each Named Plaintiff, January 2, 2015 until the date of the Approval Order; and (ii) for each Opt-In Plaintiff, the date the Opt-In Plaintiff executed a Consent to Join form and joined the Litigation as a plaintiff pursuant to 29 U.S.C. § 216(b) (*see* Dkt. Nos. 52-60, 62-63) until the date of the Approval Order.

y.   **"Service Payments to the Named Plaintiffs"** means the individual non-pensionable service payments to the Named Plaintiffs, subject to the Court's approval as set forth in Section 4(c) below.

z.   **"Settlement"** means the terms described in this Agreement.

aa.  **"Settlement Allocation Formula"** means the formula used to determine the Allocated Payments to Each Plaintiff pursuant to the terms of this Agreement. This formula is based on each Plaintiff's actual pay and hours worked data during the Relevant Time Period.

bb.  **"Settlement Checks"** means the checks issued to the Plaintiffs based on the Allocated Payments to Each Plaintiff from the Net Allocation Fund (as described in Sections 4 - 5, below).  Settlement Checks do not include the Service Payments to the Named Plaintiffs.

cc.  **"Settlement Payment"** means and refers to Defendants' gross payment of $5,400,000.00, (as set forth in Section 4(a) below) to Plaintiffs and Plaintiffs' Counsel.

2.   **No Admission of Liability and No Concession as to the Merits.**  This Agreement is not intended, and shall not be construed, as an admission that any Party or Released Party has violated any federal, state or local law (statutory or decisional), ordinance or regulation, breached any contract or committed any wrong whatsoever against any other Party, or an admission by any Party as to the merits or likelihood of success of any claim for liability or damages that has been or might have been asserted between the Parties.  Defendants continue to dispute the merits of Plaintiffs' claims in the Litigation.  The Parties enter into this Agreement to avoid the risks, uncertainty, expense, and burden of further litigation.

3.    **Process for Court Approval of Settlement**. By December 18, 2019, the Parties shall file a joint status letter, advising the Court that the Parties have resolved the Litigation and entered into a Settlement Stipulation, and that the Parties shall move for approval of the Settlement and dismissal of the Litigation by January 31, 2020. The Parties shall further request that the current stay of all deadlines remain in effect until approval of the Settlement and dismissal of the Litigation is resolved. By January 31, 2020, Plaintiffs' Counsel shall request Court approval of this Agreement and dismissal of the Litigation. Plaintiffs' Counsel shall provide drafts of the approval papers to Defendants' Counsel for comment and/or objections no later than January 15, 2020. Plaintiffs' Counsel and Defendants' Counsel shall agree on a mutually acceptable date and time for submission of the settlement papers to the Court, but shall be no later than January 31, 2020.

4.    **Components of the Settlement Payment**. The specific components of the Settlement Payment are as follows:

(a)    **Gross Settlement Fund**: The Settlement amount paid by Defendants will be $5,400,000.00.

(b)    **Attorneys' Fees and Costs**: Plaintiffs' Counsel shall move for Court approval of one-third (1/3) of the Gross Settlement Fund, which shall not exceed $1,799,820.00, as well as reimbursement of reasonable and actual costs and expenses incurred in furtherance of the Litigation, which shall not exceed $100,000.00, as payment for reasonable Attorneys' Fees and Costs, subject to Court approval. All such payments shall be reported to all governmental taxing authorities by the Claims Administrator on an IRS Form 1099.

   (i)    The Attorneys' Fees and Costs awarded to Plaintiffs' Counsel shall be at the sole discretion of the Court, and this Settlement is not contingent upon the Court's approval of such Attorneys' Fees and Costs. Defendants shall not oppose Plaintiffs' Counsel's motion for the recovery of Attorneys' Fees and Costs (which shall be filed no later than January 31, 2020) subject to the limitations herein.

   (ii)   All Attorneys' Fees and Costs awarded by the Court in connection with this Settlement shall be deducted from the Gross Settlement Fund and shall be paid by the Claims Administrator to Plaintiffs' Counsel no later than forty (40) calendar days after the Effective Date.

   (iii)  Any portion of the Attorneys' Fees and Costs (i) not approved by the Court; and/or (ii) not sought by Plaintiffs' Counsel, shall become part of the Net Allocation Fund as set forth in Section 4(d), below.

(c)    **Service Payments to the Named Plaintiffs**. Plaintiffs' Counsel shall move for Court approval of Service Payments in the amount of Fifteen Thousand Dollars ($15,000.00) to each of the five (5) Named Plaintiffs for the time and effort they have expended in furtherance of this Litigation and in

5

securing the Settlement.

(i)    The Service Payments to the Named Plaintiffs, as well as the Allocated Payments, as set forth below in Section 5, to each of the five (5) Named Plaintiffs shall fully settle each Named Plaintiff's FLSA Wage and Hour Claims as described herein and are in consideration for a release from each Named Plaintiff as set forth in Section 13, below. Such Service Payments to the Named Plaintiffs shall be at the sole discretion of the Court, and this Settlement is not contingent upon the Court's approval of such Payments. Defendants shall not oppose Plaintiffs' Counsel's motion for approval of the payment of such Service Payments to the Named Plaintiffs (which shall be filed no later than January 31, 2020), subject to the limitations herein.

(ii)    All Service Payments awarded by the Court in connection with this Settlement shall be deducted from the Gross Settlement Fund and shall be paid by the Claims Administrator to the Named Plaintiffs no later than forty (40) calendar days after the Effective Date. All such Service Payments shall be reported to all governmental taxing authorities by the Claims Administrator on an IRS Form 1099.

(iii)    Any portion of the Service Payments to the Named Plaintiffs (i) not approved by the Court and/or (ii) not sought by Plaintiffs' Counsel on behalf of any of the Named Plaintiffs shall automatically become part of the Net Allocation Fund as set forth in Section 4(d), below.

(d)    **Net Allocation Fund**:  After the payment of the Court awarded Attorneys' Fees and Costs and the Court awarded Service Payments to the Named Plaintiffs, the remaining amount of the Gross Settlement Fund shall be the "Net Allocation Fund," which shall be distributed as Allocated Payments to Each Plaintiff in accordance with the Settlement Allocation Formula as further set forth below in Section 5 and Section 10.

5.    **Allocated Payments to Each Plaintiff.**

(a)    In consideration for the full and complete settlement of each Plaintiff's FLSA Wage and Hour Claims as described herein and in exchange for a release as set forth in Section 13 of this Agreement, each Plaintiff shall receive an Allocated Payment based upon a mutually-agreed upon Settlement Allocation Formula.

(b)    The Settlement Allocation Formula is each Plaintiff's pro-rata share of the Net Allocation Fund based on the damages Plaintiffs' Counsel calculated for each Plaintiff using their actual pay and hours worked data during the Relevant Time Period. The individual Allocated Payments to Each Plaintiff based on the Settlement Allocation Formula are set forth on Exhibit B to this Agreement.

6

(c)     Fifty percent (50%) of the Allocated Payments to Each Plaintiff shall be in the form of non-payroll checks from which no payroll taxes or withholdings shall be made to account for liquidated damages and which shall be deemed non-pensionable compensation.  These payments will be reflected on an IRS Form 1099 issued by the Claims Administrator to each Plaintiff at the end of the tax year.

(d)     The remaining fifty percent (50%) of the Allocated Payments to Each Plaintiff shall be in the form of payroll checks from which the Claims Administrator shall withhold all taxes and withholdings ordinarily borne by employees and shall be deemed pensionable compensation to the extent allowable by the applicable pension plan and by law, which shall account for the payment of backpay and unpaid wages.  These payments will be reflected on an IRS Form W-2 issued by the Claims Administrator to each Plaintiff at the end of the tax year.

6.     **Payroll Taxes.**

(a)     **Plaintiffs' Share of Payroll Taxes:**  Each Plaintiff's Share of Payroll Taxes shall be made from the Allocated Payments to Each Plaintiff.

(b)     **Defendants' Share of Payroll Taxes:**  Within thirty (30) calendar days after the Effective Date, or as soon thereafter as is commercially reasonable to comply with the Claims Administrator's instructions, Defendants shall pay to the Claims Administrator an amount to cover Defendants' Share of Payroll Taxes, if any, with respect to the Service Payments to the Named Plaintiffs and the Allocated Payments to Each Plaintiff.  Any portion of the Payroll Taxes that is not needed to fund the payments shall be returned to Defendants.  The Claims Administrator shall provide a calculation to Defendants of the applicable payroll taxes, per Plaintiff, within five (5) calendar days after the Effective Date.

7.     **Funding the QSF.**  Within thirty (30) calendar days after the Effective Date, or as soon thereafter as is commercially reasonable to comply with the Claims Administrator's instructions, Defendants shall deposit into the QSF an amount to cover (a) the Gross Settlement Fund; the (b) Claims Administrator's Fees and Costs; (c) Defendants' Share of the Payroll Taxes; and (d) all other monetary obligations required pursuant to the terms of this Agreement and applicable law.

8.     **Claims Administrator Fees and Costs.**

(a)     The Claims Administrator shall serve as the administrator of the Settlement and perform the services described in this Agreement and any other services mutually agreed to by the Parties.  The Claims Administrator shall be required to sign an undertaking regarding the confidentiality of information produced as part of the settlement in the form that is attached as Exhibit C.

(b)     The Parties, through their counsel, will cooperate in good faith to resolve

any disputes regarding the Claims Administrator's ability or need to perform certain duties under this Agreement, and any unresolved disputes shall be referred to the Court.

(c)     The Claims Administrator will create the Notice Package, using the attachments to this Agreement and records provided by the Parties and/or the Parties' Counsel in accordance with this Agreement.   The Claims Administrator shall report periodically, in summary or narrative form, the substance of its findings as described in Section 8(e), below.

(d)     The Parties and/or the Parties' Counsel shall provide the Claims Administrator with certain data regarding each Plaintiff in order for the Claims Administrator to perform its duties.

(e)     The Parties will have equal access to the Claims Administrator and all information related to the mailing of the Notice Package and processing of the Settlement.  The Claims Administrator will also provide regular reports to the Parties' Counsel regarding the status of the mailing of the Notice Package to Plaintiffs, the claims administration process and the distribution of Settlement payments.

(f)     Defendants agree to pay the Claims Administrator its reasonable and actual fees and costs for the administration of the Litigation based on a separately-executed agreement with the Claims Administrator that the costs and fees shall not exceed $15,000.00, which shall be paid by Defendants into the QSF as set forth in Section 7, above.

9.     **Information to be Provided by Defendants**.

(a)     Defendants shall work cooperatively and in good faith with Plaintiffs' Counsel and the Claims Administrator to attempt to facilitate the notice and payment process.

(b)     Within twenty (20) calendar days of the entry of the Approval Order, Defendants will provide to the Claims Administrator and Plaintiffs' Counsel, to the extent the information is reasonably accessible or available, a list containing Plaintiffs' names, street addresses, email addresses, and telephone numbers.

10.     **Notice and Payment Process.**

(a)     Form of Notice: Notice to each respective Plaintiff shall inform him or her of the Settlement, the claims he or she is releasing, and his or her payment under the Settlement.

(b)     Sending the Notice Package.  Within forty (40) calendar days of the Effective Date, the Claims Administrator will send by first class mail (to the extent such addresses are available in the data described in Section 9, or

8

Plaintiffs' Counsel's records) the appropriate Notice Package to each Plaintiff that has been identified.

(c)   <u>Payment Process and Distribution of Settlement Checks.</u>  The Notice Package will also include Settlement Checks for each Plaintiff pursuant to this Agreement. The Settlement Checks must be cashed within ninety (90) days of the date that appears on each check. The Settlement Checks to Opt-In Plaintiffs shall include release language agreed-upon by the Parties as set forth in Section 13(d), below. The Claims Administrator shall provide the Parties with copies of all endorsed and deposited checks pursuant to this Agreement.

(d)   <u>Returned Notice Packages.</u>

(i)   If a Notice Package is returned with a forwarding address, the Claims Administrator shall notify Plaintiffs' Counsel and shall promptly re-mail the Notice Package to the forwarding address.

(ii)   If a Notice Package is returned without a forwarding address, the Claims Administrator shall notify Plaintiffs' Counsel and will perform a standard Level 2 Skip Trace in the manner that the Claims Administrator customarily performs skip traces in an effort to determine the Plaintiff's current address, and, to facilitate this process, use the Plaintiff's social security number, if available. If a new address is obtained, the Claims Administrator will promptly re-mail the Notice Package (including the Settlement Checks). If a new address is not obtained from the U.S. Post Office or through a standard Level 2 skip tracing, the Claims Administrator shall notify Plaintiffs' Counsel who shall use best practicable means to contact the Plaintiff to obtain information regarding alternative means to deliver the Notice Package. If Plaintiffs' Counsel is unable to contact the Plaintiff or if the Notice Package is not able to be delivered to the Plaintiff, the Parties' Counsel will then confer in good faith, on a case-by-case basis, regarding whether to instruct the Claims Administrator to conduct further traces or to contact the Plaintiff by other means. For Plaintiffs whose Settlement Checks are re-mailed, the 90-day period during which Plaintiffs must cash their Settlement Checks (as set forth in Section 10(c)) will run from the date that appears on the check. If a Settlement Check is returned as undeliverable sixty (60) days or more after it is dated and a new mailing address or alternate means to deliver the Notice Package is obtained, the Claims Administrator will re-issue the Settlement Checks for that Plaintiff. No checks will be re-issued more than 120 days after the day of the first check to that Plaintiff.

(iii)   Subject to Section 11(d)(ii) above, Settlement Checks not cashed within ninety (90) days of receipt by a Plaintiff shall be void, and monies returned to Defendants.

(iv)    If a Plaintiff reports that his or her Settlement Check(s) was lost, stolen, or undelivered, the Claims Administrator shall promptly issue a stop payment order on the original check(s) and, after investigating, if appropriate, issue a new check(s) to such Plaintiff.

(v)    The Claims Administrator shall report to the Parties' Counsel all Settlement Checks mailed, re-mailed and/or cashed, and the dates thereof.

(e)    <u>Payroll Taxes.</u>

(i)    The Claims Administrator shall calculate and pay each Plaintiff's Share of Payroll Taxes to federal and state taxing authorities as required.

(ii)    The Claims Administrator shall calculate and report to Defendants their calculation of Defendants' Share of Payroll Taxes due on the amounts paid to each Plaintiff, if any. Defendants shall pay to the Claims Administrator the amounts determined to be needed to satisfy Defendants' Share of Payroll Taxes due, and the Claims Administrator shall pay those amounts to the taxing authorities. This amount shall not be considered part of the Gross Settlement Fund.

(iii)    The Claims Administrator shall calculate and report to the Parties the Plaintiffs' Share of Payroll Taxes, if any. To the extent possible, the payments for the Plaintiffs' Share of Payroll Taxes shall be made using the tax identification number of the QSF, which the Claims Administrator shall obtain.

(iv)    Defendants' Share of Payroll Taxes paid to the Claims Administrator on any uncashed Settlement Checks shall revert to Defendants.

11.    **Plaintiffs' & Plaintiffs' Counsel's Responsibility for Any Additional Taxes**. Should any government authority determine that all or any part of the payment(s) made on an IRS Form 1099 to any Plaintiff under this Agreement are taxable, that Plaintiff will be solely responsible for the payment of employee share of such taxes. Plaintiffs' Counsel agrees that it will be solely responsible for the payment of any and all taxes due as a result of Plaintiffs' Counsel's receipt of all or any part of the payments made for Attorneys' Fees and Costs under this Agreement.

12.    **Additional Benefits Not Triggered by the Settlement Payments**. All payments to Plaintiffs made on an IRS Form 1099 shall be considered non-pensionable compensation and deemed to be paid to such Plaintiffs solely in the year in which such payments actually are received by the Plaintiff. The Parties agree and each Plaintiff acknowledges that Plaintiffs are not entitled to any new or additional compensation or benefits as a result of having received the payments made on an IRS Form 1099 (notwithstanding any contrary

language or agreement in any benefit or compensation plan document that might have been in effect during the period covered by this Settlement).

13. **Release.**

(a)     Upon the Effective Date, for and in consideration of the payment and promises of Defendants as set forth in this Agreement, and except as to such rights or claims as may be created by this Agreement, all Named Plaintiffs who sign the Agreement and Opt-In Plaintiffs who redeem Settlement Checks pursuant to this Agreement, on behalf of their respective current, former, and future heirs, family members, spouses, executors, administrators, trustees, agents, assigns and legal representatives, and each of their respective agents, representatives and attorneys, fully release and discharge the Released Parties (as defined in Section 1(w)) from any and all FLSA Wage and Hour Claims (as defined in Section 1(k)), and any and all claims for restitution (including interest) and other equitable relief, liquidated damages, interest, compensatory damages, punitive damages, penalties of any nature whatsoever, other compensation or benefits, attorneys' fees and costs that were asserted or could have been asserted under the FLSA in this Litigation, whether known or unknown, suspected and/or unsuspected, concerning, relating to and/or otherwise arising out of the time Plaintiff was employed as a Sergeant and/or Lieutenant for the Triborough Bridge and Tunnel Authority during the Relevant Time Period (the "Released Claims").

(b)     Moreover, each Plaintiff forever agrees (i) not to institute or receive any other relief from any other suit, administrative claim or other claim of any sort or nature whatsoever against the Released Parties relating to any of the Released Claims; and (ii) to expressly waive and assume the risk of any and all Released Claims against the Released Parties, which may exist in his or her favor during the Relevant Time Period, but of which he or she does not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would have materially affected his or her decision on whether to properly and timely remain part of the Settlement of this Litigation as a Plaintiff.

(c)     This Agreement does not, in any way, limit Plaintiffs' right to seek relief provided for in a collective bargaining agreement. However, Plaintiffs who sign this Agreement and Opt-in Plaintiffs who redeem Settlement Checks, waive any right to seek relief relating to wages which has been asserted, or could have been asserted under the FLSA in this Litigation.

(d)     All Settlement Checks issued to Opt-In Plaintiffs for the amount of Allocated Payments to Each Plaintiff shall contain, on the back of the check, the following limited endorsement:

**CONSENT TO REMAIN PART OF SETTLEMENT AND FINAL RELEASE OF CLAIMS:**

By endorsing this check, I consent to remain a Plaintiff in the case entitled *Feliciano et al. v. Metropolitan Transportation Authority and Triborough Bridge and Tunnel Authority*, Case No. 18-CV-0026, filed in the United States District Court for the Southern District of New York, and I agree to be bound by the Settlement negotiated by the Named Plaintiffs and Plaintiffs' Counsel in that case.

I irrevocably waive, release and forever discharge all Fair Labor Standards Act Wage and Hour Claims (defined as any suits, actions, causes of action, complaints, charges, grievances, claims, demands, debts, losses, obligations and/or liabilities based on an alleged violation of or related to the Fair Labor Standards Act ("FLSA")), including, but not limited to, for the failure to provide wages, overtime pay, failures in record keeping, off-the-clock claims, spread-of-hours pay, late payment of wages, and any and all claims for restitution (including interest) and other equitable relief, liquidated damages, interest, compensatory damages, punitive damages, penalties of any nature whatsoever, other compensation or benefits, attorneys' fees and costs that were asserted or could have been asserted under the FLSA, whether known or unknown, suspected and/or unsuspected, that were alleged or could have been alleged in the *Feliciano* litigation against MTA and/or the TBTA concerning, relating to and otherwise arising out of my employment as a Sergeant and/or Lieutenant for the TBTA up to and including [DATE OF APPROVAL ORDER], as well as any such FLSA claims against any of the MTA's and/or TBTA's past or present affiliates or subsidiaries now or as they and/or their successors may be constituted in the future, including but not limited to, MTA New York City Transit, MTA Bus Company, the Manhattan and Bronx Surface Transit Operating Authority, Metro-North Commuter Railroad Company, Long Island Rail Road, Metropolitan Suburban Bus Authority (Long Island Bus), Staten Island Rapid Transit Operating Authority, and MTA Capital Construction Company, its or their past or present officers, officials, directors, employees, managers, supervisors, representatives, attorneys, and agents, its or their heirs, predecessors, successors and/or assigns.

_____     Dated:   _____
Signature

(e)     Any modification or amendment of the above language by an Opt-In Plaintiff may, at Defendants' discretion, not be accepted, and may void the Settlement Check. If the Claims Administrator is not able to include the entire text of the limited endorsement described above on the back of the checks issued for the amounts of Allocated Payments to Each Plaintiff, the Parties will work diligently and in good faith to: (i) revise the endorsement and/or the documents attached to and/or accompanying the checks; (ii) include the endorsement on a document attached to and/or accompanying the checks and incorporate it on the back of the checks by reference; and/or (iii) take other steps to effectuate both a consent to remain part of the Settlement and a release of the claims described in the limited endorsement above by virtue

12

of the Plaintiff signing and/or endorsing the check.

(f) Settlement Checks issued to the Named Plaintiffs for the amount of Allocated Payments to Each Plaintiff and Service Payments to the Named Plaintiffs shall not contain the "CONSENT TO REMAIN PART OF SETTLEMENT AND FINAL RELASE OF CLAIMS" endorsement on the back of the check (as described in Section 13(d) above).

14. **Settlement Contingent on Court Approval.**

This Agreement is contingent upon the Court's approval of the Settlement. If the Court does not approve the Settlement or the Effective Date does not occur, this Agreement may be voided at either Party's option, in which case this Agreement (including its Exhibits) will become null and void, and will not be used as evidence for any purpose, including without limitation, in connection with the Litigation or any other lawsuit, administrative or other legal proceeding, claim, investigation, or complaint. The Parties shall retain the right to pursue or challenge all claims and allegations, including without limitation, the right to decertify and challenge the propriety of collective action certification on all applicable grounds or as otherwise permitted by the Court.

In such an event, the Parties shall resume the Litigation unless the Parties jointly agree to: seek reconsideration or appellate review of the decision denying approval of the Settlement; or attempt to renegotiate the Settlement and seek Court approval of a renegotiated settlement.

In the event any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not approved, the Litigation will proceed as if no settlement had been attempted. In that event, Defendants shall retain the right to assert all applicable defenses and challenge all claims and allegations, including but not limited to contesting whether this Litigation should be maintained as a collective action and, contesting the merits of the claims being asserted by the Plaintiffs in this Litigation.

15. **Return of Documents/Data.** Within sixty (60) days of the Effective Date, Plaintiffs' Counsel agrees to return or destroy all non-public documents and information produced by Defendants in the Litigation other than its work product, and provide written notice to Defendants' Counsel, addressed to the attention of Steven Hurd, Esq., certifying that it has returned and/or destroyed all such documents.

16. **Mutual Full Cooperation.** The Parties will fully cooperate with each other and with the Claims Administrator to accomplish the terms of this Agreement, including but not limited to, the preparation and execution of documents necessary to implement this Agreement. The Parties will use their best efforts to effectuate this Agreement, including during any appeals, and will use their best efforts to obtain the Court's approval of the Settlement and to defend the Settlement from any legal challenge.

17. **Complete Agreement.** No representation, promise, or inducement has been offered or made to induce any Party to enter into this Agreement, which contains the entire, complete, and integrated statement of all settlement terms and supersedes all previous oral or written

agreements.  This Agreement may not be amended or modified except by a writing signed by the Parties' authorized representatives.

18.    **Knowing and Voluntary Agreement**.  The Parties enter into this Agreement knowingly, voluntarily, and with full knowledge of its significance.  The Parties have not been coerced, threatened, or intimidated into signing this Agreement and have consulted with legal counsel regarding the Agreement.

19.    **Notifications and Communications**.   Any notifications or communications made in connection with this Agreement shall be sent to the Parties at the addresses of their respective counsel as follows:

*For the Named Plaintiffs and Opt-In Plaintiffs*:

Innessa Melamed Huot
FARUQI & FARUQI LLP
658 Third Avenue, 26th Floor
New York, NY 10017
Tel: 212-983-9330

Joshua Beldner
TILTON BELDNER, LLP
626 RXR Plaza
Uniondale, NY 11566
Tel: 516-262-3602

*For Defendants MTA and TBTA:*

Steven Hurd
Joshua S. Fox
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036
Tel: 212-969-3000

20.    **Severability**.  If any part of this Agreement is found to be illegal, invalid, inoperative or unenforceable in law or equity, except the release in Section 13 above, such finding shall not affect the validity of any other part of this Agreement, which shall be construed, reformed and enforced to affect the purposes thereof to the fullest extent permitted by law.

21.    **Captions and Interpretations**.  Section or paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any provision hereof.  Each term of this Agreement is contractual and not merely a recital.

22.    **Binding on Assigns**.  This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, successors and assigns.

23.    **Enforcement of Agreement and Governing Law**.  This Agreement will be governed by New York law.  The Parties submit to the jurisdiction of the Court for all purposes relating to the review, approval, and enforcement of this Agreement.

24.   **Agreement Form and Construction.**

      (a)   The terms and conditions of this Agreement are the result of lengthy, carefully considered, arms-length negotiations between the Parties and this Agreement shall not be construed in favor of or against any of the Parties by reason of their participation in the drafting of this Agreement.

      (b)   This Agreement may be executed in electronic counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one binding Agreement.

      (c)   This Agreement shall be construed and interpreted to effectuate the intent of the Parties, which is to provide, through this Settlement, for a complete resolution of the Litigation.

25.   **Parties' Authority.**   The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and bind the Parties hereto and the Opt-In Plaintiffs to the terms and conditions thereof.

 

 

\* \* \*   The rest of this page is left intentionally blank   \* \* \*

**IN WITNESS WHEREOF**, the Parties each voluntarily and without coercion have caused this Agreement to be signed on the dates entered below:

**Named Plaintiffs:**

_____     ____12/11/19____
VINCENT FELICIANO             Date

_____     ____12/11/2019____
DIANA LONGA                   Date

_____     ____12/11/2019____
PETER RONESS                  Date

_____     ____12/11/2019____
CARLO TAGLIAVIA               Date

_____     ____12/11/2019____
GREG DEVANEY                  Date

**Defendants**:

METROPOLITAN TRANSPORTATION AUTHORITY

By: _____     ____12/11/2019____
    Alison MacGregor              Date
    Deputy General Counsel – Employment, MTA


TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY

By: _____     ____12/11/2019____
    Adana Savery                  Date
    Assistant General Counsel - TBTA

16

| # | EMPLOYEE | DISTRIBUTION PERCENTAGES | ALLOCATED PAYMENT TO EACH PLAINTIFF |
|---|---|---|---|
| 1 | Acevedo, Joseph E. | 1.69320549% | $57,995.34 |
| 2 | Aiken, Edward L | 1.12593809% | $38,565.41 |
| 3 | Albano, Michael | 0.14296830% | $4,896.92 |
| 4 | Almonte, Tiffany | 0.22973647% | $7,868.89 |
| 5 | Anastasatos, John | 1.81353323% | $62,116.78 |
| 6 | Aristizabal, Edward | 0.16946989% | $5,804.65 |
| 7 | Arutyunyants, Roman | 0.56845884% | $19,470.74 |
| 8 | Aurilia, Michael S | 0.80523961% | $27,580.91 |
| 9 | Barbarito, Corinne F | 0.16179287% | $5,541.70 |
| 10 | Barnwell, Michael | 0.31967263% | $10,949.36 |
| 11 | Barnwell, William J | 0.07925532% | $2,714.64 |
| 12 | Bass, Matthew H | 0.44919013% | $15,385.57 |
| 13 | Bayer, Ronald K. | 0.50343002% | $17,243.38 |
| 14 | Blaeser, Anthony J. | 0.59912446% | $20,521.09 |
| 15 | Brooks, Lori A. | 0.31350168% | $10,738.00 |
| 16 | Burgos, Frank R | 0.95333340% | $32,653.38 |
| 17 | Butler, Terence B | 0.47854154% | $16,390.91 |
| 18 | Bzomowski, Casimir | 0.80151448% | $27,453.31 |
| 19 | Caholo, Orlando | 2.47777347% | $84,868.20 |
| 20 | Camacho, Nina | 0.39173093% | $13,417.49 |
| 21 | Campbell, Donna K | 0.21727761% | $7,442.15 |
| 22 | Canade, James C | 0.30964243% | $10,605.81 |
| 23 | Caratelli, Caspere W | 0.15583394% | $5,337.59 |
| 24 | Carpinone, Richard | 0.58354345% | $19,987.41 |
| 25 | Chiarelli, Michael F | 0.56878162% | $19,481.79 |
| 26 | Cirksey, Jamar R | 0.98260314% | $33,655.93 |
| 27 | Corso, Jerome J | 0.32708841% | $11,203.37 |
| 28 | Cortapasso, Paul | 0.65026155% | $22,272.63 |
| 29 | Crespo, Damaris | 0.43354925% | $14,849.84 |
| 30 | Crispino, Peter R | 0.20629711% | $7,066.05 |
| 31 | Cupo, Richard E | 0.76540844% | $26,216.62 |
| 32 | D'Amico, Anthony F | 0.05461943% | $1,870.81 |
| 33 | Dandrea, Matthew B | 0.00836507% | $286.52 |
| 34 | Degennaro, Neil F | 0.52970449% | $18,143.33 |

| # | EMPLOYEE | DISTRIBUTION PERCENTAGES | ALLOCATED PAYMENT TO EACH PLAINTIFF |
|---|---|---|---|
| 35 | Deloughry, Dennis G | 0.67503453% | $23,121.15 |
| 36 | DeSetto, Cheryl A | 0.40799552% | $13,974.58 |
| 37 | Devaney, Gregory J | 2.15726168% | $73,890.10 |
| 38 | Diaz, Israel C | 2.31173522% | $79,181.09 |
| 39 | DiCristo, Gaetano N | 0.40480608% | $13,865.34 |
| 40 | Driscoll, James | 0.28250644% | $9,676.35 |
| 41 | Earhart, Gerald T | 0.16310162% | $5,586.52 |
| 42 | Ecock, John P | 0.77565107% | $26,567.45 |
| 43 | Eglowitz, Michael | 0.00468543% | $160.48 |
| 44 | Ellis, Hilda T | 0.49392088% | $16,917.68 |
| 45 | Elmore, Janet | 0.40377834% | $13,830.14 |
| 46 | Elsis, Edward J | 0.77033459% | $26,385.35 |
| 47 | Evans, Consuelo T | 1.13687142% | $38,939.89 |
| 48 | Fallon, Steve M | 0.83083267% | $28,457.51 |
| 49 | Farinacci, Frank G | 0.08814203% | $3,019.02 |
| 50 | Fay, Lorraine | 0.13122544% | $4,494.71 |
| 51 | Feliciano, Vincent E | 2.47284604% | $84,699.43 |
| 52 | Frammarino, James J | 0.34703450% | $11,886.56 |
| 53 | Fredrick, Meena | 1.21611188% | $41,654.02 |
| 54 | Gajdos, Michael W | 1.11293564% | $38,120.05 |
| 55 | Garber, Gennady | 0.54680060% | $18,728.90 |
| 56 | Gavagan, Debra M | 1.41083456% | $48,323.62 |
| 57 | Gordon, Shawn L | 1.40858332% | $48,246.51 |
| 58 | Gouveia, Robert P | 0.23131791% | $7,923.05 |
| 59 | Graniela, Felix | 0.24125722% | $8,263.49 |
| 60 | Grimm, Edward J | 0.38950932% | $13,341.40 |
| 61 | Gugliucci, Vincent | 0.00468543% | $160.48 |
| 62 | Gutzeit, John P. | 0.00468543% | $160.48 |
| 63 | Hall, Michael W | 0.25157054% | $8,616.74 |
| 64 | Haque, Shaikh N | 0.95350220% | $32,659.17 |
| 65 | Herbert, Mark L | 0.18187366% | $6,229.50 |
| 66 | Horan, John M | 0.32476453% | $11,123.77 |
| 67 | Horman, Erik J. | 0.42080695% | $14,413.40 |
| 68 | Houston, Daniel B | 1.82836366% | $62,624.75 |

| # | EMPLOYEE | DISTRIBUTION PERCENTAGES | ALLOCATED PAYMENT TO EACH PLAINTIFF |
|---|---|---|---|
| 69 | Ibrahim, Ashraf | 0.00468543% | $160.48 |
| 70 | Jarldane, Debra | 0.15437410% | $5,287.59 |
| 71 | Johnston, Donald | 0.36754470% | $12,589.07 |
| 72 | Jorgensen, Gregory V | 0.20889186% | $7,154.92 |
| 73 | Kennedy, Lawrence C | 0.24603361% | $8,427.09 |
| 74 | Krajkovic, Eric A | 1.29430255% | $44,332.19 |
| 75 | Lai, Kakeung | 0.69767471% | $23,896.61 |
| 76 | Lampropoulos, Christina A | 0.01258116% | $430.93 |
| 77 | Landon, Joshua B | 1.00010986% | $34,255.56 |
| 78 | Lawson, Tina M | 0.56649971% | $19,403.63 |
| 79 | Lee, Edwin | 0.52080666% | $17,838.57 |
| 80 | Leggio, Paul J | 0.46342603% | $15,873.18 |
| 81 | Lonergan, Dennis | 0.00468543% | $160.48 |
| 82 | Longa, Diana | 0.76387444% | $26,164.07 |
| 83 | Lopez, Scherley | 0.43850510% | $15,019.59 |
| 84 | Magenta, John | 0.43839718% | $15,015.89 |
| 85 | Marcigliano, Anthony | 0.42631655% | $14,602.11 |
| 86 | Mardakhayev, Mardakhay | 1.20350450% | $41,222.20 |
| 87 | Matias, Thomas | 0.73354761% | $25,125.33 |
| 88 | Matias, Vanessa | 0.09781330% | $3,350.28 |
| 89 | McCormack, Keith M | 0.06972420% | $2,388.18 |
| 90 | McNeil, Vincent D | 0.43275786% | $14,822.74 |
| 91 | Mintz, Frank D | 0.17152864% | $5,875.16 |
| 92 | Miranda, Luis A | 1.33833150% | $45,840.26 |
| 93 | Mitchell, Elizabeth | 0.00741022% | $253.81 |
| 94 | Montoya, Alexander H | 0.22687748% | $7,770.96 |
| 95 | Muriel, Joseph | 1.76993252% | $60,623.37 |
| 96 | Nelson, Thomas M | 0.12563785% | $4,303.32 |
| 97 | Ng, Wilson | 2.60636041% | $89,272.54 |
| 98 | Orlando, Nelson | 1.39390616% | $47,743.80 |
| 99 | Ortiz, Manuel | 0.48991346% | $16,780.42 |
| 100 | O'Sullivan, Kelly E | 0.52249333% | $17,896.34 |
| 101 | O'Sullivan, Mark | 2.34134771% | $80,195.37 |
| 102 | Owens, Kristopher J | 0.68083703% | $23,319.89 |

| # | EMPLOYEE | DISTRIBUTION PERCENTAGES | ALLOCATED PAYMENT TO EACH PLAINTIFF |
|---|---|---|---|
| 103 | Padilla, Paul J | 0.23184822% | $7,941.22 |
| 104 | Palazzola, Dennis J | 0.61975202% | $21,227.62 |
| 105 | Parker, Juanita S | 0.36590734% | $12,532.98 |
| 106 | Peluso, Luigi D | 0.90726977% | $31,075.62 |
| 107 | Persad, Harry J | 0.54367526% | $18,621.86 |
| 108 | Persaud, Steven | 0.24697143% | $8,459.22 |
| 109 | Petrillo, Joseph R | 0.15580473% | $5,336.59 |
| 110 | Plavnick, David C | 0.83528997% | $28,610.18 |
| 111 | Polly, Robert W | 0.26375343% | $9,034.03 |
| 112 | Powell, Anthony L | 0.13105557% | $4,488.89 |
| 113 | Ragusa, Thomas J | 0.02911220% | $997.15 |
| 114 | Ramos, Robert E | 0.41532767% | $14,225.72 |
| 115 | Ramos, William B | 0.29271902% | $10,026.15 |
| 116 | Rankin, Randy G | 0.91509369% | $31,343.61 |
| 117 | Ray, Richard E | 0.23161357% | $7,933.18 |
| 118 | Rebele, Michael S | 1.00475801% | $34,414.77 |
| 119 | Reid, Eleanor E | 0.16752208% | $5,737.93 |
| 120 | Rivera, Luis O | 0.28817243% | $9,870.42 |
| 121 | Rivera, Roberto | 1.49122548% | $51,077.16 |
| 122 | Rivera, Steven A | 0.26908567% | $9,216.67 |
| 123 | Rondon, Luis R | 0.93184942% | $31,917.52 |
| 124 | Roness, Peter | 0.69226084% | $23,711.18 |
| 125 | Salemmo, Raymond | 0.29299586% | $10,035.64 |
| 126 | Salmeron, Jose A | 0.80103829% | $27,437.00 |
| 127 | Sanders, Dorothy | 0.00468543% | $160.48 |
| 128 | Sanseverino, Louis M | 0.79988267% | $27,397.42 |
| 129 | Saravia, Giovanny C | 0.45476712% | $15,576.59 |
| 130 | Schatz, Christopher | 0.81337657% | $27,859.61 |
| 131 | Schiano, Joseph P | 0.94068808% | $32,220.26 |
| 132 | Schmalzried, Mark J | 0.29803102% | $10,208.10 |
| 133 | Scognamillo, Robert E | 0.29976448% | $10,267.47 |
| 134 | Seeger, John A | 0.49372696% | $16,911.04 |
| 135 | Shaw, Thomas J | 0.38650592% | $13,238.52 |
| 136 | Simmons, Daniel J | 0.08848038% | $3,030.61 |

| # | EMPLOYEE | DISTRIBUTION PERCENTAGES | ALLOCATED PAYMENT TO EACH PLAINTIFF |
|---|---|---|---|
| 137 | Simons, Lee F | 0.75044271% | $25,704.01 |
| 138 | Singh, Sunita A | 0.28116076% | $9,630.26 |
| 139 | Sirlin, Marc | 0.00468543% | $160.48 |
| 140 | Slater, Daniella | 0.02162333% | $740.64 |
| 141 | Slevin, Thomas A | 0.21541125% | $7,378.22 |
| 142 | Smith, Alim | 0.28196688% | $9,657.87 |
| 143 | Smolka, Raymond C | 0.61847348% | $21,183.83 |
| 144 | Sorensen, Carl | 0.10126754% | $3,468.60 |
| 145 | Spencer, Wayne | 0.49166368% | $16,840.37 |
| 146 | Steadman, Danielle T | 0.04867093% | $1,667.07 |
| 147 | Suarez, Anthony | 0.78326266% | $26,828.16 |
| 148 | Tagliavia, Carlo | 0.95343820% | $32,656.97 |
| 149 | Telesco, James | 0.54674355% | $18,726.95 |
| 150 | Thompson, Daynee T | 0.56365935% | $19,306.35 |
| 151 | Tirado, Richard | 0.46578472% | $15,953.96 |
| 152 | Torres, Emil N | 0.24813133% | $8,498.94 |
| 153 | Torres, Ruben | 0.08995558% | $3,081.14 |
| 154 | Torres, Sally I | 0.27174633% | $9,307.80 |
| 155 | Torres, Wilfredo | 0.07783179% | $2,665.88 |
| 156 | Tramontana, Anthony F | 0.12701202% | $4,350.39 |
| 157 | Troia, Keith | 1.68832983% | $57,828.34 |
| 158 | Tzitzikalakis, Martha S | 0.11181917% | $3,830.01 |
| 159 | Vella, Justin C | 0.75008753% | $25,691.85 |
| 160 | Vinciguerra, Michael N | 0.48320153% | $16,550.52 |
| 161 | Volpe, Anthony | 0.37513964% | $12,849.21 |
| 162 | Vrettos, Emanuel M | 0.88621086% | $30,354.32 |
| 163 | Wall, Steven D | 0.47880752% | $16,400.02 |
| 164 | Weissmeier, John A | 0.58757411% | $20,125.47 |
| 165 | Whitaker Jr, Clarence | 2.31771220% | $79,385.81 |
| 166 | Yeninas, Kevin A | 0.81029650% | $27,754.11 |
| 167 | Yodice, Victoria B | 0.16439386% | $5,630.79 |
| 168 | Yuen, Tak W | 0.60100312% | $20,585.44 |
| 169 | Zanetti, Emperatriz G | 1.02209598% | $35,008.63 |
| | TOTAL = | 100.00000000% | $3,425,180.00 |