F&F FARUQI & FARUQI LLP
ATTORNEYS AT LAW

NEW YORK CALIFORNIA DELAWARE GEORGIA PENNSYLVANIA

**Innessa M. Huot**
ihuot@faruqilaw.com

February 21, 2020

**VIA ECF**

Hon. Judge Vernon S. Broderick
United States District Court
Southern District of New York
40 Foley Square, Room 415
New York, New York 10007

**Re:** *Feliciano, et al. v. Metropolitan Transportation Authority, et al.* (18-cv-00026)

Dear Judge Broderick:

We represent Plaintiffs in the above-referenced matter and write jointly with Defendants to respectfully request approval of the parties' proposed settlement of this action (the "Settlement"), as required by *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015).

## I. Background

Named Plaintiffs Vincent Feliciano, Diana Longa, Greg Devaney, Peter Roness, and Carlo Tagliavia and the additional 164 Opt-in Plaintiffs who joined this lawsuit (together, "Plaintiffs") worked as Sergeants and/or Lieutenants for Defendant Triborough Bridge and Tunnel Authority ("TBTA"), an affiliate agency of Defendant Metropolitan Transportation Authority ("MTA") (together, "Defendants"). On January 2, 2018, Named Plaintiffs filed a Collective Action Complaint on behalf of themselves and others similarly situated, alleging that Defendants violated the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") by, *inter alia*, failing to properly and timely pay overtime wages. *See* ECF No. 1 ("Complaint").

Specifically, Named Plaintiffs claim that Defendants failed to pay Plaintiffs for pre-shift and post-shift off-the-clock work (*id.* at ¶¶ 36-64), have implemented a time keeping system that cuts recorded hours worked (*id.* at ¶¶ 65-86), have failed to properly calculate overtime (*id.* at ¶¶ 87-106), and have failed to timely pay overtime (*id.* at ¶¶ 107-16). On March 6, 2018, MTA and TBTA each filed an Answer, denying all liability for Plaintiffs' claims. *See* ECF Nos. 23-24. On July 3, 2018, the parties appeared before Magistrate Judge Barbara Moses for a Settlement Conference, where they discussed the merits of the case and the overall prospects for resolution. *See* ECF No. 36 ¶ 5. On August 17, 2018, the Court conditionally certified the FLSA Collective and, over the next three months, 164 Opt-in Plaintiffs joined this lawsuit (169 Plaintiffs total). *See* ECF Nos. 44-45, 49, 52-60, 62-63.

In furtherance of the parties' efforts to reach a fair and reasonable settlement of this matter, counsel engaged in extensive investigation and voluminous discovery, including the exchange of personnel files, correspondence, memo books, training materials, payroll documents, paystubs, timecards, and schedules. *See* Huot Decl. ¶¶ 20-21, 32.[1] Additionally, counsel for the parties conducted 16 depositions, including depositions of the Named Plaintiffs, five Opt-in Plaintiffs, and six representatives of Defendants. *Id.* at ¶ 22. Further, Plaintiffs' Counsel interviewed every single Plaintiff and analyzed over 75,000 records and electronically stored information ("ESI") pertaining to each of the Plaintiffs. *Id.* at ¶¶ 20, 32. Based on these detailed interviews, investigations, depositions, and analysis of records, Plaintiffs' Counsel calculated Plaintiffs' damages. *Id.* at ¶¶ 23, 33.

[1] Hereinafter, all references to Declarations of Innessa M. Huot and Joshua Beldner in Support of Settlement Approval and Award of Attorneys' Fees and Expenses shall be referred to as "Huot Decl." and "Beldner Decl.", respectively.





Thereafter, the parties engaged in extensive settlement discussions, exchanging numerous settlement proposals, damage calculations, case law analysis, and additional records. *Id.* at ¶ 24. On November 15, 2019, the parties participated in a full day mediation session with Martin F. Scheinman, an experienced and well-respected private mediator, and made significant progress towards resolving the matter. *Id.* at ¶ 27; ECF Nos. 77-79. Thereafter, the parties proceeded to exchange additional documents and engaged in further negotiations, in an attempt to resolve this case. Huot Decl. ¶ 28. On December 11, 2019, the parties participated in a second full day mediation session with Mr. Scheinman and agreed to resolve this matter, with Defendants agreeing to pay a Settlement Amount of $5,400,000 on the terms set forth in the Settlement Stipulation ("Agreement")[2] now before this Court. *Id.* at ¶ 29; *see also id*. at Exhibit A ("Ex. A").[3]

## II. The Proposed Settlement is Fair, Reasonable, and Consistent with *Cheeks*

Plaintiffs submit that this Settlement is especially fair and reasonable as it provides for a cumulative ***64% recovery*** on all vigorously disputed and fact-intensive claims for unpaid wages and late payment of wages — even assuming all factual and legal assumptions are made in Plaintiffs' favor.

To assess the reasonableness of the Settlement, the Court must consider the totality of the circumstances and examine the five factors identified in *Beckert*: (1) Plaintiffs' range of possible recovery; (2) the extent to which the Settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the Settlement is the product of arm's length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Beckert v. Rubinov*, No. 15 Civ.1951(PAE), 2015 WL 6503832, at *1 (S.D.N.Y. Oct. 27, 2015) (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012). This Settlement satisfies the five *Beckert* factors.

### A. The Settlement Provides a Significant Portion of Plaintiffs' Maximum Possible Recovery

The first *Beckert* factor strongly supports a finding that the Settlement is exceedingly fair and reasonable as the Gross Settlement Fund provides Plaintiffs with a 64% recovery of all their claims according to Plaintiffs' calculations.[4] Huot Decl. ¶¶ 31, 46-50. This recovery reflects a reasonable compromise and exceeds recovery percentages recently approved in other wage-and-hour settlements within this Circuit. *See Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 219 (S.D.N.Y. 2015) ("[A] recovery figure of 22.8% seems within the bounds of reasonableness."); *Wang v. Masago Neo Asian Inc.*, No. 14-CV-6249(DRH)(ARL), 2016 WL 7177514, at *2 (E.D.N.Y. Sept. 26, 2016) (recommending approval where gross settlement fund provided a 52% recovery of potential damages); *Griffin v. Aldi, Inc.*, No. 5:16-cv-00354, ECF No. 109 (N.D.N.Y. Nov. 15, 2018) (approval of settlement of 28% of maximum damages); *Cohetero v. Stone & Tile, Inc.*, No. 16 CV 4420, 2018 WL 565717, at *7 (E.D.N.Y. Jan. 25, 2018) (approval of settlement for "approximately two-thirds of [ ] claimed, actual unpaid wages, which is not unreasonable in light of the risks of litigation.").

To ascertain Plaintiffs' maximum possible recovery, Plaintiffs' Counsel conducted extensive interviews with every single one of the 169 Plaintiffs and analyzed tens of thousands of records and ESI provided by both Plaintiffs and Defendants in this case. Huot Decl. ¶¶ 20-21, 32, 41. Based on this

---

[2] Hereinafter, all capitalized terms shall be defined as in § I of the Settlement Agreement.

[3] Hereinafter, all exhibits attached to the Huot Decl. will be referred to as Ex. __".

[4] Each Plaintiff shall be distributed a pro rata share of the Net Allocation Fund (Ex. A at § 1(o)) in an amount based on the damages Plaintiffs' Counsel calculated for each Plaintiff using their actual pay and hours worked data during the Relevant Time Period. The individual Allocated Payments to each Plaintiff are set forth in the Settlement Agreement. *See* Ex. A.






analysis and investigation, as well as formal discovery, Plaintiffs' Counsel assessed the strengths and weaknesses of each of Plaintiffs' claims and calculated the range of possible recoveries. *Id.* at ¶¶ 23, 33.

Here, Plaintiffs allege that they perform compensable pre-shift and post-shift work (i.e., checking emails, updating logs, briefing, etc.), but Defendants' time keeping system automatically rounds their clock-in and clock-out times to their scheduled tour start and end times; thereby cutting all hours worked outside their scheduled tours. *Id.* at ¶ 35; Complaint ¶¶ 36-86. Defendants claim that they provide "check-in pay" as additional compensation intended to cover pre-tour briefing time, and dispute that Plaintiffs perform other compensable work outside their scheduled tour times. Defendants further contend that this "check-in pay" should be used to offset Plaintiffs' claimed overtime. Huot Decl. ¶ 35.

Plaintiffs claim that their pre-shift and post-shift work are indeed compensable and dispute Defendants' characterization of "check-in pay" or its use as an offset against claimed overtime. *Id.* Plaintiffs contend that this "check-in pay" is merely a fixed lump sum payment promised under their Collective Bargaining Agreement ("CBA"), similar to a Longevity payment or a Law Enforcement differential, that is paid without regard to the number of hours worked. *Id.* Plaintiffs further claim that this check-in pay amount should not be used as an offset but should instead be included in the regular rate of pay for purposes of calculating overtime. *Id.*

Plaintiffs also allege that Defendants failed to properly calculate their overtime rates because, in addition to check-in pay, they failed to include additional compensation in their regular rates of pay for purposes of calculating overtime. Complaint ¶¶ 87-106. Specifically, Plaintiffs claim that Defendants paid them depressed overtime rates because they did not include: (1) Differentials; (2) Attendance Bonuses; and (3) Lump Sum Payments promised under their CBA and paid without regard to hours worked.[5] *Id.*; Huot Decl. ¶ 36. Defendants vigorously dispute these contentions, claiming that Plaintiffs improperly include certain payments in the proposed overtime rates, and that the contractual overtime rates paid to Plaintiffs are greater than what is required under the FLSA; thereby rendering damages non-existent. *Id.* Defendants also claim that Plaintiffs are not entitled to overtime because they purportedly have supervisory and/or administrative responsibilities and/or were "highly compensated" and are, therefore, exempt under the FLSA. Finally, Defendants raise numerous "good faith" defenses, claiming that any damages should extend back only two, rather than three years under the FLSA. *Id.*

The parties vehemently dispute these issues, and have exchanged statutes, regulations, case law, and research memoranda to support their respective positions. *Id.* at ¶¶ 24, 34-38. The parties engaged in numerous telephonic and in-person conferences to discuss the facts and law underlying their positions. *Id.* All parties agree that these issues involve fact intensive inquiries regarding Plaintiffs' pre-shift and post-shift activities, to determine whether they are deemed compensable. *Id.* at ¶ 39. The parties also agree that these issues involve fact intensive assessments of Plaintiffs' duties to determine whether their primary duties were law enforcement or supervisory in nature. *Id.* The parties further agree that these issues likely require credibility determinations that significantly bear on liability and damages. *Id.*

Nevertheless, for settlement purposes only, the parties assumed the main disputed issues to the benefit of the Plaintiffs. *Id.* at ¶ 40. Indeed, the parties assumed that: (1) all recorded work time was compensable; (2) check-in pay is not an offset against claimed overtime; (3) all Differentials, Attendance Bonuses, and Lump Sum Payments would be included in the overtime rate; (4) Plaintiffs are not exempt under the FLSA; and (5) the statute of limitations for all claimed damages would extend back three

[5] Lump Sum Payments specifically at issue in this case included: (1) Longevity Pay; (2) Check-In Pay; (3) SOBA special hours; (4) Law Enforcement Differentials; and (5) Earned Pay.






years. *Id.* Indeed, for settlement purposes only, the parties assumed that Plaintiffs would prevail on all of their claims and that Defendants would lose on all of their defenses – a very favorable assumption.

Subject to all of these advantageous assumptions, Plaintiffs' Counsel calculated the maximum possible damages for each of the 169 Plaintiff by analyzing each of their paystubs, time records, approval reports, and schedules for every pay period during the relevant time period. *Id.* at ¶ 41. Plaintiffs' Counsel recalculated Plaintiffs' regular rate of pay, to include the additional compensation previously described, and then calculated what Plaintiffs claim to be the FLSA-compliant overtime rate. *Id.* at ¶¶ 42-44. Plaintiffs' Counsel then calculated unpaid overtime by determining both the number off-the-clock hours cut by Defendants' timekeeping system and the amount of overtime wages Defendants underpaid due to their depressed overtime rates. *Id.* at ¶ 45. The total back pay damages stemming from these claims amounts to $4,084,171.97. *Id.* at ¶ 46.

Additionally, Plaintiffs also allege that Defendants' payment of their overtime two pay periods (i.e., four to six weeks) after their work is performed, is unnecessarily and unreasonably late in violation of the prompt pay requirements of the FLSA. Complaint ¶¶ 107-16; Huot Decl. ¶ 47. Plaintiffs assert that their maximum damages for this claim is $4,343,763.39, which amounts to liquidated damages equal to 100% of all overtime payments made by Defendants, as all of them were allegedly paid late. Huot Decl. ¶ 48. Defendants contend that the timing of the overtime payments do not violate the FLSA because they were made as soon as administratively feasible and reasonably practical under the circumstances. *Id.* at ¶ 47. Defendants further dispute Plaintiffs' damage calculations claiming, among other things, that each Plaintiff's subsequent payment of overtime should offset liquidated damages claimed from the previous payment, as Plaintiffs typically receive overtime each pay period. *Id.*

Making all favorable assumptions, Plaintiffs assert that their damages for all their claims amount to $8,427,935.36 ($4,084,171.97 for alleged unpaid wages and $4,343,763.39 for alleged late payment of wages). *Id.* at ¶ 49. Notwithstanding all the vigorously disputed issues in this case, Plaintiffs submit that the gross Settlement provides for an impressive 64% of these damages to all Plaintiffs. *Id.* at ¶ 50.

Overall, Defendants contest the validity of Plaintiffs' claims, assertions, and assumptions and contend that Plaintiffs' potential recovery is either non-existent or significantly lower than estimated. Indeed, if Defendants successfully establish their exemption defenses, then Plaintiffs' claims would not be viable. Moreover, if Defendants successfully prevail on even one of their defenses – check-in pay, compensable work, statute of limitations, or any of the other factually intensive issues and defenses discussed above – then Plaintiffs would stand to recover only a fraction of the potential damages provided under this Settlement. Given the fact-intensive nature of the claims, and the risk that Defendants might potentially prevail on at least some of their defenses, Plaintiffs' Counsel believes that this Settlement, which provides for a 64% of all of Plaintiffs' claims, is an overwhelmingly positive result for the Plaintiffs.

**B. By Entering Into the Settlement, the Parties Avoid Significant Burden In Establishing Their Claims and the Attendant Risks of Continued Litigation**

The second and third *Beckert* factors are met because both parties will avoid the significant expense of motion practice, expert discovery, and the risk of a lengthy, fact-intensive trial. Courts have repeatedly recognized that cases where plaintiffs must prove that they engaged in off-the-clock work are both fact-intensive and challenging, as it is difficult to establish the parties' claims and defenses. *See, e.g.*, *Riedel v. Acqua Ancien Bath N.Y. LLC*, No. 14 Civ. 7238, 2016 WL 3144375, at *7 (S.D.N.Y. May 19, 2016) (recognizing risks of proving damages for off-the-clock claims); *Long v. HSBC USA Inc.*, No.

14 Civ. 6233(HBP), 2015 WL 5444651, at *4 (S.D.N.Y. Sept. 11, 2015) ("[T]he claims and defenses are fact-intensive and present risks, including the potential inability to prove the number of hours worked and amount of unpaid overtime wages[.]"). Here, the burden will be especially great because the parties maintain drastically different assessments for whether and how much Plaintiffs worked before and after their scheduled tours.

Indeed, further litigation would result in "additional expense, including . . . motion practice, trial preparation, trial and appeal, that could meaningfully decrease possible recovery for plaintiffs." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 299–300 (E.D.N.Y. 2015); *Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411, 420–21 (S.D.N.Y. 2014) (finding, in an FLSA action, that "the large number of class members and the fact-intensive nature of their claims mean that litigation would likely be lengthy, complex, and expensive"). Defendants will also likely move to decertify the FLSA collective, and both parties will move for summary judgment. Given the fact-intensive analysis of the issues in dispute, this case will likely proceed to trial, at a minimum, on the issues of how many hours Plaintiffs worked before and after their scheduled tours, whether their work was considered compensable, and whether their primary duties were law enforcement rather than supervisory and/or administrative in nature.

Because both parties would face significant expense and risk by continuing to litigate, the second and third *Beckert* factors also weigh in favor of approval.

**C. The Settlement Is the Product of Arm's-Length Bargaining Between Experienced Counsel and There Is No Possibility of Fraud or Collusion**

The fourth and fifth factors – whether the Settlement is the product of an arm's-length bargaining process and the possibility of fraud or collusion – also support a conclusion that the Settlement is fair and reasonable. "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472 (KBF) (DCF), 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 Civ. 3234(LB), 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (approval granted where settlement "was the result of arm's length negotiations, which were undertaken in good faith by counsel") (internal quotation marks omitted). All parties in this matter are represented by counsel experienced in litigating employment disputes and class and collective actions, and Plaintiffs' Counsel has extensive experience representing employees in complex class and collective action litigation. Huot Decl. ¶¶ 2-3; Ex. H (Faruqi Firm Resume); Beldner Decl. ¶¶ 16-22. Parties have worked diligently to advance their clients' positions and negotiate a fair settlement. Huot Decl. at ¶ 51.

Significantly, the parties participated in a Settlement Conference before Magistrate Judge Barbara Moses on July 3, 2018, where the merits of both parties' positions and the opportunities for settlement were discussed at length. *See* ECF No. 36. Then, on November 15 and December 11, 2019, the parties participated in ***two full-day mediation sessions*** with experienced and well-respected mediator Martin F. Scheinman, which led to a resolution of this matter. ECF Nos. 77-79. This history and litigation process leave no doubt that counsel for the parties negotiated at arm's-length and that the possibility of fraud or collusion is non-existent. *See Hernandez v. Anjost Corp.*, No. 11 Civ. 1531 (AT), 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("A settlement like this one, reached with the help of a third-party neutral, enjoys a 'presumption that the settlement achieved meets the requirements of due process.'" (quoting *Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 WL 4357376, at *8 (S.D.N.Y. Sept. 16, 2011))); *Vasquez v. TGD Grp., Inc.*, No. 14-CV-7862 (RA), 2016 WL 3181150, at *3 (S.D.N.Y. June 3, 2016) (same).





Critically, this Settlement Agreement does not contain any terms that would militate against the Court approving it. For example, the Settlement Agreement does not contain any confidentiality provision or non-disparagement clause and allows Plaintiffs to openly and freely discuss their employment experiences, this lawsuit, their claims, and this Settlement with anyone. *See* Ex. A; *see also Ezpino v. CDL Underground Specialists, Inc.*, No. 14-CV-3173 (DRH) (SIL), 2017 WL 3037483, at *2-3 (E.D.N.Y. June 30, 2017) (citing *Cheeks*, 796 F. 3d at 206) (approving settlement agreement where it did not "contain a confidentiality provision nor does it contain a non-disparagement clause").

Likewise, the Plaintiffs' release here is limited to only FLSA wage and hour claims, during the time Plaintiffs worked as TBTA Sergeants and/or Lieutenants during the Relevant Time Period. Ex. A § 13. This release is specifically tailored and does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. *See Ezpino*, 2017 WL 3037483, at *3. It should also be emphasized that there are no absent class members that are potentially "unknowingly" releasing any claims. On the contrary, every single Plaintiff will have an individual choice about whether to accept the Settlement, redeem their Settlement Checks, and release their claims or not be bound by the Settlement and retain their right to pursue their claims separately. *See* Ex. A at § 13.

In sum, this Settlement provides for a significant portion of Plaintiffs' possible recovery, mitigates significant risks and costs of litigation, is the product of arm's-length bargaining amongst experienced counsel, does not contain a confidentiality provision, non-disparagement clause, or overbroad release, is exceedingly fair and reasonable, and represents a fair compromise of bona fide disputes. As such, the Court should approve this Settlement.

## III. <u>The Proposed Attorneys' Fees and Costs are Fair and Reasonable</u>

Plaintiffs request that the Court approve Plaintiffs' Counsel's fees of $1,799,820.00, which is one-third of the Gross Settlement Fund. *See Navarrete v. Milano Mkt. Place, Inc.*, No. 18-CV-7858 (OTW), 2019 WL 4303347, at *2 (S.D.N.Y. Sept. 11, 2019) (the attorneys' fee award of "one-third of the settlement sum is reasonable and consistent with fees upheld by courts in this District").

Plaintiffs' Counsel was retained on a purely contingency basis and has advanced all the costs and shouldered all the risk in the litigation. Huot Decl. ¶ 59. The requested fee is consistent with the one-third contingency fees frequently approved as part of FLSA settlements in this Circuit and in this District. *See, e.g.*, *Flores v. Anjost Corp.*, No. 11 Civ. 1531(AT), 2014 WL 321831, at *8 (S.D.N.Y. Jan. 29, 2014) (finding one-third award "consistent with the norms" of the Second Circuit and collecting cases where one-third was awarded in FLSA cases); *Singh v. MBD Construction Mgmt., Inc.*, No. 16 Civ. 5216(HBP), 2018 WL 2332071, at *2 (S.D.N.Y. May 23, 2018) (noting that one-third of settlement is "normal rate"); *Gilliam v. Addicts Rehab. Ctr. Fund*, 05 Civ. 3452(RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (same); *Behzadi v. Int'l Creative Mgmt. Partners, LLC*, No. 14-cv-4382 (LGS), 2015 WL 4210906 (S.D.N.Y. July 9, 2015) (awarding one-third to plaintiffs' counsel).

The reasonableness of the requested fee is further confirmed by applying the lodestar method as a "cross check." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007); *Flores*, 2014 WL 321831, at *9; *In re Penthouse Exec. Club Comp. Litig.*, No. 10 Civ. 1145(KMW), 2014 WL 185628 at *10 (S.D.N.Y. Jan. 14, 2014). The lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *Id.*

As of February 19, 2020, 2020, Plaintiffs' Counsel has billed 4341.50 hours on this matter – an adversarial litigation that includes 169 Plaintiffs, where Plaintiffs' Counsel: investigated Plaintiffs' claims, drafted a detailed pleading, engaged in substantial discovery, exchanged discovery requests and responses, analyzed over 75,000 documents, employment records, and ESI for all Plaintiffs, prepared for and handled 16 depositions, interviewed every single Plaintiff and numerous witnesses, meticulously calculated the damages for each cause of action for each of the 169 Plaintiffs, participated in two Court conferences, assisted in notice administration for the FLSA collective, participated in a valuable in-person settlement discussion with defense counsel, exchanged extensive correspondence between and among the parties, constantly kept in touch with all of the 169 Plaintiffs to update them on case developments and respond to inquiries, drafted a comprehensive mediation statement after the conclusion of discovery, and participated in two all-day mediation sessions that resulted in the Settlement – amounting to $1,913,137.50 in fees if calculated pursuant to the lodestar. *See* Huot Decl. ¶ 70; Ex. I (Total Lodestar); Ex. G (Faruqi Firms' contemporaneously-kept billing records); Beldner Decl. ¶¶ 24-25; Beldner Decl. at Ex. A (Tilton Beldner's contemporaneously-kept billing records).

The lodestar is calculated based on hourly rates for Plaintiffs' Counsel that have been approved by other courts in the Second Circuit and across the country. Huot Decl. ¶¶ 60-63; *see also Georgiev, et al. v. Shapiro, et al.*, No. 1:19-cv-00122 (JPO), ECF Nos. 41-6, 47 (S.D.N.Y. Oct. 2, 2019) (approving rates of $500 for Ms. Huot, $425 for Mr. Hartzband, $350 for Mr. Collopy, and $175 for Mr. Aloise); *Morrell, et al. v. NYC Green Transp. Grp., LLC, et al.*, No. 1:18-cv-00918 (PKC-VMS) (E.D.N.Y. May 8, 2019) (approving hourly rates of $500 for Ms. Huot, $350 for Mr. Collopy, and $175 for Mr. Aloise); *Griffin, et al. v. Aldi, Inc.*, No. 5:16-cv-354 (LEK/ATB), ECF Nos. 104-4, 109 ¶¶ 18, 20 (N.D.N.Y. Nov. 15, 2018) (approving a lodestar multiplier of 1.96, noting Plaintiffs' Counsels' expertise in complex wage and hour litigation, commending Plaintiffs' Counsels on the quality of their work, and approving hourly rates of $500 for Ms. Huot, $350 for Mr. Collopy, and $175 for Mr. Aloise); *Alam v. O&S Gen. Contractors Corp*., No. 18-cv-2069 (LDH)(JO), ECF Nos. 19-4, 20 (E.D.N.Y. Aug. 17, 2018) (approving hourly rates of $600 for Ms. Huot, $450 for Mr. Hartzband, $400 for Mr. Collopy, and $310 for Mr. Aloise); *Guttentag, et al. v. Ruby Tuesday, Inc*., No 12 Civ. 3041 (AT), ECF Nos. 107-8, 109 (S.D.N.Y. Oct. 2, 2014) (approving hourly rates of $875-$625 for partners, $585-$555 for senior associates, $390-$375 for junior associates, $315 for head paralegal, and $275-$245 for other paralegals); *Foster, et al. v. L-3 Commc'ns EoTech, Inc., et al.*, No. 15-cv-03519-BCW, ECF Nos. 140-1, 155 (W.D. Mo. July 7, 2017) (approving hourly rates of $550 for Ms. Huot, $375 for Mr. Collopy, and $310 for Mr. Aloise); *Run Them Sweet, LLC, v. CPA Global, LTD, et al.*, No. 16 CV 1347, ECF Nos. 108-4, 114 (E.D. Va. Oct. 6, 2017) (approving hourly rates of $550 for Ms. Huot); *March, et al. v. First Choice Med., PLLC*, No. 15-cv-3669 (GRB) (E.D.N.Y. Mar. 7, 2017) (court approved one-third fee after lodestar, based on $500 per hour rate for Ms. Huot, used as cross-check).

Additionally, courts have previously noted that "[a] reasonable hourly rate is 'the rate a paying client would be willing to pay.'" *HVT, Inc, v. Port Authority of N.Y. and N. J.*, No. 15 Civ. 5867 (MKB) (VMS), 2018 WL 6079932, at *1 (E.D.N.Y. Nov. 21, 2018) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)). A meaningful portion of Plaintiffs' Counsels' practice is non-contingency cases where clients in fact pay on an hourly basis at the following rates: $500 per hour for Ms. Huot, $425 to $500 per hour for Mr. Beldner and Mr. Tilton; $425 per hour for Mr. Hartzband, $350 per hour for Mr. Collopy, $175 per hour for head paralegal Mr. Aloise, and $125 to $150 per hour for other paralegals. Huot Decl. ¶¶ 59-61; Beldner Decl. ¶ 23. Working on the instant matter on a contingency basis required Plaintiffs' Counsel to expend considerable time and resources that could have been otherwise allocated towards non-contingency, hourly work. Huot Decl. ¶ 59. Nevertheless, Plaintiffs' Counsel undertook prosecuting this action

without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk. *Id.*

The requested fee award of $1,799,820.00 represents a ***negative multiplier*** of 0.94 of Plaintiffs' Counsels' lodestar of $1,913,137.50. *Id.* at ¶ 70. This is significantly below the norm within the Second Circuit and this District. *See, e.g., Griffin, et al. v. Aldi, Inc.*, No. 16-cv-354 (LEX/ATB) ECF No. 109 (N.D.N.Y. Nov. 15, 2018) (awarding Plaintiffs' Counsel a 1.96 lodestar multiplier); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) ("[c]ourts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers"); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548(RLE), 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) ("Courts commonly award lodestar multipliers between two and six."); *Johnson*, 2011 WL 4357376, at *20 (noting that "Courts regularly award lodestar multipliers from two to six times lodestar[]" and collecting cases); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 RWS, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Henry v. Little Mint, Inc.*, No. 12 Civ. 3996 (CM), 2014 WL 2199427, at *16 (S.D.N.Y. May 23, 2014) ("In fact, the [1.9] multiplier is at the lower end of the range routinely granted by courts . . . ."); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 0520 (JLC), 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (granting attorneys' fees equal to 6.8 times lodestar); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) ("[T]he modest multiplier of 4.65 is fair and reasonable."); *Rabin v. Concord Assets Grp., Inc.*, No. 89 Civ. 6130 (LBS), 1991 WL 275757, at *l–2 (S.D.N.Y. Dec. 19, 1991) (awarding multiplier of 4.4); *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 438-39 (S.D.N.Y. 2014) (2.28 multiplier); *Hall v. ProSource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 WL 1555128, at *17 (E.D.N.Y. Apr. 11, 2016) (approving a lodestar multiplier of 2.08); *Spicer v. Pier Sixty LLC*, No. 08 Civ. 10240 (PAE), 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2012) (approving a lodestar multiplier of 3.36).

Additionally, the requested fee award will also compensate Plaintiffs' Counsel for the considerable time needed to administer the Settlement going forward. *See Flores*, 2014 WL 321831, at *9 ("In wage and hour cases, Class Counsel are often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund."); *Johnson*, 2011 WL 4357376, at *16 (noting that future work covered in settlement award supports fee application). Thus, Plaintiffs' request for approval of attorneys' fees is reasonable.

Further, Plaintiffs request the Court approve unreimbursed costs in furtherance of this matter. Plaintiffs' Counsel has incurred $80,816.08 in actual costs and expenses[6] for court filings, service fees, mediation costs, deposition costs, transcript costs, claims administration costs, skip tracing services, expert fees, travel, telephone, and postage. Huot Decl. ¶ 72. These expenses are reasonable, as well as incidental and necessary to the litigation; therefore, their reimbursement under the Settlement should be approved. *See Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients.") (quoting *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)).

[6] In the Agreement, Plaintiffs' Counsel was not yet aware of the actual costs and expenses incurred in furtherance of the Litigation and identified $100,000.00 as the ceiling for what potential costs and expenses could be. *See* Ex. A at § 4(b). Subsequently, Plaintiffs' Counsel calculated its actual costs and expenses to be $80,816.08, well less than the $100,000.00 contemplated ceiling in the Agreement.





Accordingly, Plaintiffs' request for approval of $1,799,820.00 in attorneys' fees and $80,816.08 in unreimbursed expenses, for a total of $1,880.636.08 as compensation for Plaintiffs' counsel's work and their costs in this matter, is reasonable.

**IV. <u>The Proposed Service Awards to Named Plaintiffs Are Fair and Reasonable</u>**

Plaintiffs request that this Court grant service awards of $15,000 each to the five Named Plaintiffs who took leadership roles in the litigation and contributed to the success of the case as a whole. "Service awards fulfill the important purpose of compensating plaintiffs for the time they spend and the risks they take." *Flores*, 2014 WL 321831, at *10 (citing *Massiah v. MetroPlus Health Plan, Inc.*, No. 11-cv-05669, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012)). In examining the reasonableness of a requested service award, courts consider: (1) the personal risk incurred by the plaintiffs; (2) the time and effort expended by the plaintiffs in assisting the prosecution of the litigation; and (3) the ultimate recovery in vindicating statutory rights. *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997).

Service awards are especially important in employment cases, where employees have assumed risks of future retaliation and losing future employment opportunities. Indeed, Named Plaintiffs "face[] the risk[s] that new employers would learn that they were class representatives in a lawsuit against their former employer and take adverse action against them. Moreover, each time they change jobs, they will risk retaliation in the hiring process." *Asare v. Change Grp. of N.Y., Inc.*, No. 12 Civ. 3371(CM), 2013 WL 6144764, at *15 (S.D.N.Y. Nov. 18, 2013); *see also Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548(RLE), 2012 WL 1320124, at *14 (S.D.N.Y. Apr. 16, 2012) (recognizing that plaintiffs in wage and hour case "fac[e] potential risks of being blacklisted as 'problem' employees").

First, Named Plaintiffs were all employed by Defendants when they retained Plaintiffs' Counsel to investigate their claims against Defendants. Huot Decl. ¶ 53. By initiating this action, they risked retaliation from Defendants.[7] Moreover, they continue to risk retaliation by their current employers and put their ability to secure future employment at risk as well. *Guippone v. BH S & B Holdings, LLC*, No. 09 Civ. 01029(CM), 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ. 7670(BSJ)(JCF), 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010) ("[F]ormer employees put in jeopardy their ability to depend on the employer for references in connection with future employment."). Service awards "provide an incentive to seek enforcement of the law despite these dangers." *Id.*; *Henry*, 2014 WL 2199427, at *10 ("In a wages and hours case, where a low level employee assumes responsibility for prosecuting an action against an employer and takes considerable personal risk in so doing, [service] awards are singularly appropriate.").

Second, Named Plaintiffs contributed a significant amount of time and effort to the case. *See* Huot Decl. at Exs. B - F (Decls. of Vincent Feliciano, Diana Longa, Greg Devaney, Peter Roness, Carlo Taliavia). By way of example only, Named Plaintiffs provided Plaintiffs' Counsel with detailed factual information regarding their job duties, Defendants' policies, and other information and documents relevant to their own claims and the claims of the other Plaintiffs. *See id.* Moreover, they each appeared for lengthy full-day depositions, they all attended the settlement conference with Judge Moses, and they all participated in two all-day mediation sessions. *See Parker*, 2010 WL 532960, at *1 (recognizing

[7] Named Plaintiffs do not allege that Defendants retaliated against them; but the risk of retaliation is important to weigh in any plaintiff's decision to come forward and commence litigation in a representative capacity.

efforts of plaintiffs including meeting with counsel, reviewing documents, formulating theory of case, identifying and locating other class members to expand settlement participants, and attending court proceedings); *Frank v. Eastern Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (recognizing the important role that plaintiffs play as the "primary source of information concerning the claims," including by responding to counsel's questions and reviewing documents). Named Plaintiffs were instrumental in obtaining discovery from Plaintiffs and assisting Plaintiffs' Counsel in analyzing the compensation records and preparing damage calculations. Exs. B – F. Named Plaintiffs made inquiries and collected information on behalf of Plaintiffs and then disseminated information about the status of the litigation to keep Plaintiffs apprised on any developments. *Id.* Indeed, Named Plaintiffs were vital to the prosecution of this litigation and in securing this Settlement. *Id*.

Third, the Settlement has vindicated the statutory rights of Plaintiffs under the FLSA, which further supports the request for the Service Awards. The requested service awards of $15,000 to Named Plaintiffs, collectively amounts to approximately 1.4% of the total recovery, which is far below what other courts have held to be a reasonable percentage. *See Reyes v. Altamarea Grp., LLC*, No. 10-CV-6451 (RLE), 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (approving awards representing approximately 16.6% of the settlement); *Parker*, 2010 WL 532960, at *2 (finding that service awards totaling 11% of the total recovery are reasonable); *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94 Civ. 5587(PKL)(RL), 2003 WL 21136726, at *2-3 (S.D.N.Y. May 15, 2003) (2.6% of $975,000).

Analyzing the reasonableness of the proposed service awards in terms of absolute dollars, courts routinely approve service awards equal to or greater than the awards requested here. *See Hernandez*, 2013 WL 1209563, at *10 (approving service payment of $15,000 to the named plaintiffs in FLSA collective action); *Sewell*, 2012 WL 1320124, at *15 (awarding $15,000 service award in FLSA case); *Reyes*, 2011 WL 4599822, at *9 (approving award of $15,000); *Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) (approving award of $15,000); *DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494(RLE), 2015 WL 2255394, at *7 (S.D.N.Y. May 11, 2015) (awarding $15,000 to named plaintiff, "recogniz[ing] the risks that the named-Plaintiff faced by participating in a lawsuit against her former employer and the efforts she made on behalf of the class, including producing documents, continuously speaking with Class Counsel, and actively participating in mediation."); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143 (ENV)(RER), 2011 WL 754862, at *8 (E.D.N.Y. Feb. 18, 2011) (awarding service payments ranging from $30,000 to $7,500 in FLSA collective action). Accordingly, the service awards are reasonable and should be approved.

## V. <u>Conclusion</u>

Accordingly, the parties jointly request that the Court approve of the Settlement, So Order the Stipulation and [Proposed] Order Approving the Settlement and Dismissing the Case, and have it entered on the docket by the Clerk of the Court. We thank Your Honor for the Court's time and consideration.

Respectfully submitted,

Innessa M. Huot

Encl.

cc: All Counsel of Record